Louise **ARCHER** et al., Petitioners,

v.

**DISTRICT OF COLUMBIA DEPT. OF HUMAN RESOURCES, Respondent.**

No. 9464.

District of Columbia Court of Appeals.

Argued March 11, 1976.*

Decided July 6, 1977.

---

* At the court's later request, supplemental post-argument memoranda were submitted by the parties.

Gerald W. Von Korff, Washington, D. C., for petitioners.

S. Perry Jones, Asst. Corp. Counsel, Washington, D. C., with whom C. Francis Murphy, Corp. Counsel, Washington, D. C., at the time the brief was filed, Louis P. Robbins, Principal Asst. Corp. Counsel, and Richard W. Barton, Asst. Corp. Counsel, Washington, D. C., were on the brief, for respondent.

Before KERN, GALLAGHER and MACK, Associate Judges.

GALLAGHER, Associate Judge:

This is a petition to review a decision of the District of Columbia Department of Human Resources (DHR) in a class action proceeding denying petitioners an evidentiary hearing to challenge the validity of a District of Columbia Council Regulation.[1] This court's jurisdiction over the petition is asserted to be based upon D.C. Code 1973, §§ 1–1510 and 11–722. Petitioners were recipients of public assistance under the General Public Assistance Program or the Aid to Families with Dependent Children Program administered by the DHR.

On December 27, 1974, the District of Columbia Council enacted D.C. Regulation No. 74–42 which amended §§ 2 and 5(a) of D.C. Regulation No. 72–17. Regulation No. 72–17 had established the method which the DHR was required to use in computing the benefits received by eligible welfare recipients. Regulation No. 74–42 adopted a new computational method (hereinafter referred to as the Texas formula), and its effect was to reduce, and in some cases to terminate completely, payments to those recipients with outside income and resources.

Although the effective date of the new regulation was to be January 1, 1975, benefits were not to be reduced until March 1, 1975. The DHR notified adversely affected recipients that their benefits would be reduced on March 1, 1975 and that they had a right to request a hearing. Because many recipients requested hearings, they were consolidated. Attorneys for petitioners requested that payments be continued at the February 1, 1975 level until a final decision was rendered. The basis of this request was D.C. Regulation No. 68–20 which grants a "fair hearing" to a public assistance recipient who is adversely affected by any action of the DHR and who requests a hearing. Despite the request for continuance of payments at the previous level, payments were reduced or terminated on March 1, 1975.

A hearing was later conducted by a DHR hearing examiner. Petitioners were primarily concerned with whether benefits would be restored to the previous level pending a final decision; they claimed that the DHR's actions violated rights given to them by Regulation 68–20. In addition, they sought to have the DHR declare Regulation No. 74–42 invalid because of the Council's alleged failure to comply with the District of Columbia Administrative Procedure Act, D.C. Code 1973, § 1–1501 et seq., in enacting the regulation. The DHR's position was that it was presented with a Council regulation and was required to act in accordance with its directives.

The hearing examiner made the following findings: (a) the issues involved were issues of law; (b) a hearing officer has no power to change or alter agency policy; and (c) the Fair Hearing Division of the DHR was not the proper forum in which to determine the issues of law. He recommended that the claimants' requests for the hearing be denied. In a decision letter, the DHR adopted the recommendations of the hearing examiner and ruled that the Fair Hearing Division lacked the authority to rule on the validity of Regulation No. 74–42, which reduced the payments. The DHR concluded that the hearing requests were properly dismissed. It is this decision that petitioners challenge.

---

1. Petitioners represent that the class is comprised of 8,000 families whose payments were reduced, and 117 other families whose payments were terminated, as a result of the regulation under attack. This allegation is not in dispute.

Later on, new legislation in the form of D.C. Law No. 1–74 became effective on July 1, 1976.[2] This law purported to do several things, among which were: (a) to repeal Regulation No. 74–42; (b) to adopt again its so-called Texas formula as the method which would be used by the DHR in computing payments to those recipients with outside sources of income; and (c) to apply this new legislation retroactively to January 1, 1975.

In this appeal from the DHR's decision, petitioners make several contentions: (1) the DHR improperly ruled that it had no power to invalidate Regulation No. 74–42; (2) at the least, the DHR should have conducted an evidentiary hearing in order to develop a record for review; (3) the DHR's failure to provide benefits to petitioners at the previous level pending a hearing decision violated the rights given petitioners by Regulation No. 68–20, § 17; and (4) the DHR's failure to serve proposed adverse decisions on petitioners requires reversal. The DHR asserts, on the other hand, that this court is without jurisdiction to entertain the Petition for Review because it was not a contested case. Finally, this court subsequently raised the issue sua sponte whether the new remedial legislation (No. 1–74), rendered this Petition for Review moot.

■ Preliminarily, we will state that an administrative agency has no authority to declare invalid legislation enacted by the parent legislature. *See Panitz v. District of Columbia,* 72 U.S.App.D.C. 131, 112 F.2d 39 (1940); 3 K. Davis, Administrative Law Treatise § 20.04 (1958). It is the duty of

the agency to administer the legislation and to apply its provisions according to its best lights. *California State Restaurant Association v. Whitlow,* 58 Cal.App.3d 340, 129 Cal.Rptr. 824 (1976); *State v. State Board of Public Welfare,* 141 Mont. 209, 376 P.2d 1002 (1962). Consequently, contrary to petitioners' assertion, the DHR had no power to invalidate Regulation No. 74–42 which had been enacted by the District of Columbia Council.

■ Petitioners also contend that DHR had no right to reduce the payments initially as Regulation No. 68–20, § 17 prohibits reduction or termination of one's payments after a request for a "fair hearing" is made. Where, as here, the hearing request before the agency is bottomed on an attack on the validity of a legislative enactment the DHR had no alternative but to comply with the provisions of the Council's enactment. Under these circumstances, in construing the regulation it would hardly be sensible for the Council to state, in effect, that DHR should reduce payments in accordance with its new regulation but, at the same time, not reduce them if a claimant requests a hearing before the agency to determine whether the Council enacted a valid regulation, something the agency has no power to do. But beyond this, petitioner had a "fair hearing" to the extent the agency ruled on its lack of authority on the issue of legislative validity. *See Weinberger v. Salfi,* 422 U.S. 749, 765–66, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975).[3]

It transpired that after the United States District Court invalidated Regulation No.

---

**2.** This legislation was enacted by the Council after oral argument in this case.

**3.** There is no need to discuss the remaining contentions of petitioners going to the invalidity of the Regulation (No. 74–42) in view of the conclusion we reach on the effect of the remedial legislation (No. 1–74) subsequently enacted by the Council.

We will point out, however, that in a different proceeding in the United States District Court attacking the validity of the same Regulation (No. 74–42) under attack here for failure to follow the rule-making procedures of the DCAPA the court agreed with the contentions made and struck down the regulation. No ap-

peal was taken from that order of the District Court granting an injunction and declaratory judgment. For some reason, petitioners here chose not to adopt the same expeditious, procedural course of action in the trial court.

In any event, as far as this proceeding is concerned the invalidity of the procedures followed in relation to that Regulation (No. 74–42) becomes academic since we conclude here *infra,* that the remedial legislation (No. 1–74) has in effect resolved these issues.

We have examined the remaining contentions and find them to be without merit.

74–42 for failure to follow the notice provisions of the DCAPA, the Council enacted remedial legislation (No. 1–74) to cure the defects found to exist with Regulation No. 74–42.[4] Consequently, we requested post-argument briefing and conclude that as a result of the subsequent legislation the ultimate issue has been resolved and we should affirm, for reasons we will explain.[5]

The invalidated Regulation had the effect of reducing, and in a relatively small number of instances terminating, payments to recipients of public assistance under the Aid to Families with Dependent Children Program or the General Public Assistance Program administered by Respondent (DHR). The remedial legislation was designed to retain the reduced payments (Texas formula) but remove the prior invalidity problem by following correct legal procedures in its enactment. In addition, and more importantly for present purposes, the new Law not only repealed Regulation No. 74–42 but made the pertinent provisions relating to reduced payments retroactive to January 1, 1975, which was the date when old Regulation No. 74–42 had become effective.

In post-argument filings petitioners take the position that the case is not entirely disposed of by the enactment of D.C. Law 1–74 on July 1, 1976. They contend that though Respondent may properly use the reduced payment method for computing monthly assistance beginning at the effective date of the new legislation, July 1, 1976, the reduced payments under the invalidated Regulation were improper.[6] Boiled down, petitioners are now contending that they should receive supplemental payments from March, 1975 through June, 1976—the period during which the payments were being reduced under the invalidated Regulation.

While the position of petitioners has surface plausibility, upon analysis we conclude that there is not justification for restitution to petitioners under principles of equity.

■ There is no doubt the Regulation which instituted the reduced payments under the so-called Texas method was invalid for failure by the Council to meet the notice requirements under the DCAPA (D.C. Code 1973, § 1–1501 et seq.). The District Court so held and there was no appeal from its judgment.[7] In so concluding, the District Court relied upon a prior decision of this court in *Junghans v. Department of Human Resources*, D.C.App., 289 A.2d 17 (1972). In *Junghans*, this court spelled out the correct procedures in relation to the notice requirements of rule-making yet they were ignored here in relation to the invalidated Regulation.

■ Having said this, the fact remains that we are necessarily here sitting as the equity court of first resort. *See Thompson v. Washington*, 551 F.2d 1316, 1319 n. 5 (D.C.Cir. 1977). Our task then is to fashion a remedy which is governed by equitable considerations bearing in mind we are dealing with what, in reality, has now crystallized into a suit for restitution. We say this because as a result of the post-argument memoranda by the parties on the question of mootness due to the subsequent remedial

---

4. Petitioners also question certain emergency legislation enacted prior to No. 1–74 and apparently in response to the invalidation of Regulation No. 74–42 by the United States District Court. We see no need to consider that emergency legislation in view of our disposition of this case.

5. The government (respondent) contends that we are not permitted to reach the merits of the issues raised as this court has no jurisdiction because this is not a "contested case" within the meaning of D.C. Code 1973, § 1–1501 et seq. (the DCAPA). We need not get immersed in this contention, however, as these petitioners instituted a proceeding under Regulation No. 68–20, which provides for an *adjudicatory*

hearing, in order to contest a reduction of their payments. Such a proceeding is by its nature a contested case. While they also raised questions on the invalidity of the Regulation the fact is that their principal purpose was to avoid, by contesting, the imminent reduction of their payments. We see no need to question our jurisdiction on this record.

6. The reduced payments actually commenced on March 1, 1975.

7. *Lewis v. Yeldell*, No. 75–0111 (D.D.C., filed July 8, 1975).

legislation, petitioners have constricted their public assistance claims to an entitlement to retroactive, supplemental payments encompassing the period between the effective date of the invalidated Regulation and the effective date of the remedial law, a period of about 16 months.

It is now conceded by petitioners that they have no entitlement to retroactive payments after the effective date of the remedial legislation. This concession necessarily recognizes that the Council was within its authority in reducing the monthly payments as it did. They concentrate their restitutional claims of entitlement to the previous period when the invalidated Regulation was in effect, and before it was repealed. Consequently, unlike in *Jordan v. Weaver*, 472 F.2d 985 (7th Cir. 1973), *rev'd sub nom. Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), *Rothstein v. Wyman*, 467 F.2d 226 (2d Cir. 1972), *cert. denied*, 411 U.S. 921, 93 S.Ct. 1552, 36 L.Ed.2d 315 (1973), and *Rosado v. Wyman*, 437 F.2d 619 (2d Cir. 1970), *aff'd mem.*, 402 U.S. 991, 91 S.Ct. 2169, 29 L.Ed.2d 157 (1971), where the state action was in violation of the federal statute, the action of the Council was invalid for procedural not substantive violations. In other words, it is acknowledged that the Council had the authority originally to reduce the payments if it had pursued the required notice procedures under the DCAPA. Once the procedural invalidity was cured by way of the remedial legislation petitioners accepted it and made no further claim stemming from the new law even though the reduced payments were the same as under the invalidated Regulation.

Claims by social welfare recipients for restitution due to the invalidity of local governmental action which has effected the loss or reduction of monthly payments are not peculiar to this case. There has been a flurry of cases in this area recently. *E. g., Jordan v. Weaver, supra; Rothstein v. Wyman, supra; Carver v. Hooker*, 369 F.Supp. 204 (D.N.H.1973), *aff'd*, 501 F.2d 1244 (1st Cir. 1974), *vacated mem.*, 420 U.S. 1000, 95 S.Ct. 1440, 43 L.Ed.2d 758 (1975); *Machado v. Department of Health and Rehabilitative Services of the State of Florida*, 357 F.Supp. 890 (S.D.Fla.1973). *See also Thompson v. Washington, supra.* They frequently result in the necessity for a delicate balancing of the equities.[8] On the one hand, in the nature of the case we have badly needed income lost in the past to the public assistance recipients. On the other hand, "retroactive payments become compensatory rather than remedial" and "the coincidence between previously ascertained and existing needs becomes less clear." *Rothstein v. Wyman, supra* at 235. It has been pointed out that "[r]etroactive payments [might] go to persons no longer on the welfare [payment] rolls, thereby preventing already inadequate [local] funds from being channeled to the persons whose needs are immediate and urgent."[9] Beyond this, it has been found that the administrative costs which would be involved might well be "out of proportion to the benefits conferred, [and] will also impose additional strains upon an administrative mechanism already overburdened by the daily task of coping with the substantial demands of welfare administration."[10]

It would doubtless be costly administratively to reconstruct the past events and reprocess claims involving some 8,000 families[11] and any restitution would come from a budget which is, as a matter of common knowledge, already strained. We know from the experiences of the recent past, both here and in other cities, that municipal financial resources are anything but limitless.

---

**8.** *See also Democratic Central Committee of the District of Columbia v. Washington Metropolitan Area Transit Commission,* 158 U.S.App. D.C. 7, 485 F.2d 786 (1973), *cert. denied,* 415 U.S. 935, 94 S.Ct. 1451, 39 L.Ed.2d 493 (1974), and *Williams v. Washington Metropolitan Area Transit Commission,* 134 U.S.App.D.C. 342, 415 F.2d 922 (1968), *cert. denied,* 393 U.S. 1081, 89 S.Ct. 860, 21 L.Ed.2d 773 (1969), rate-making cases, and *Thompson v. Washington, supra,* a public housing rental issue case.

**9.** *Rothstein v. Wyman, supra* at 234.

**10.** *Id.*

**11.** *See* note 1 *supra.*

"In equity, as nowhere else, courts eschew rigid absolutes and look to the practical realities and necessities inescapably involved in reconciling competing interests, notwithstanding that those interests have constitutional roots." *Lemon v. Kurtzman,* 411 U.S. 192, 201, 93 S.Ct. 1463, 1469, 36 L.Ed.2d 151 (1973). Upon a balancing of all these equitable considerations, we conclude there should not be restitution in relation to the deficiencies claimed.[12]

*Affirmed.*

MACK, Associate Judge, concurring in part:

I join in the court's opinion to the extent that it affirms the Department of Human Resources' decision (*i. e.,* that the Fair Hearings Division was the wrong forum for petitioners' claims since it lacked authority to rule on the validity of the City Council Regulation and that the request for an evidentiary hearing was therefore properly dismissed). However, I do not agree that petitioners' claim for restitution is before this court, and I would not reach the issue.

---

12. This is not to minimize the serious administrative blunder which took place once again in failing to follow elementary principles of rulemaking in enacting the subsequently invalidated Regulation No. 74–42. In other circumstances, this omission might very well be controlling to a decision.