**Franklyn E. AIKENS, Petitioner,**

v.

**DISTRICT OF COLUMBIA DEPARTMENT OF HOUSING AND COMMUNITY DEVELOPMENT, Respondent.**

No. 84–885.

District of Columbia Court of Appeals.

Argued Feb. 5, 1986.
Decided Oct. 3, 1986.

---

John C. Schaible, Washington, D.C., for petitioner.

Beverly J. Burke, Asst. Corp. Counsel, with whom John H. Suda, Acting Corp. Counsel at the time the brief was filed, Charles L. Reischel, Deputy Corp. Counsel, and Richard B. Nettler, Asst. Corp. Counsel, Washington, D.C., at the time the brief was filed, were on the brief, for respondent.

Before PRYOR, Chief Judge, and NE-BEKER and TERRY, Associate Judges.

PRYOR, Chief Judge:

In this case, the District of Columbia Department of Housing and Community Development (DHCD) terminated petitioner Franklyn E. Aikens' benefits under the Section 8 Housing Assistance Payments Program—Existing Housing (Section 8) after he failed to provide the agency with bank records during its annual recertification of his income. On appeal, petitioner asserts first that termination of his benefits was unlawful because DHCD failed to follow procedures for income verification outlined in applicable federal regulations and criteria. Second, petitioner argues that DHCD's termination of his Section 8 benefits violated due process because of the absence of agency rules establishing the time allowed Section 8 participants to supply income verification documents during recertification.

We find no violation of federal regulations or criteria in DHCD's termination of petitioner's benefits. We do conclude, however, that in failing to promulgate rules establishing the time allowed Section 8 participants to provide income verification documents during recertification, the agency violated petitioner's rights to a fair procedure. Thus, we remand the case to DHCD with instructions to reinstate petitioner's Section 8 benefits, and develop procedures specifying the time allowed Section 8 participants to supply income verification documents during recertification.

## I

Petitioner Franklyn E. Aikens has been a participant in the Section 8 program since May 1979. Under the Section 8 program, Mr. Aikens makes a gross family contribution to his housing costs equal to a percentage of his monthly income after allowances.[1] With monies supplied by the United States Department of Housing and Urban Development (HUD), DHCD pays the balance of petitioner's housing costs directly to his landlord.

Because both a participant's continued eligibility for Section 8 benefits, as well as the size of his gross family contribution, are a function of income, HUD regulations require that DHCD conduct an annual recertification of income. *See* 24 C.F.R. § 882.116(m) (1983); *see also* U.S. DEPT. OF HOUSING AND URBAN DEVELOPMENT HAND-BOOK 7420.7, PUBLIC HOUSING AGENCY ADMINISTRATIVE PRACTICES HANDBOOK FOR THE SECTION 8 EXISTING HOUSING PROGRAM, ¶ 10–2(a) (November 1979) (HUD HANDBOOK). Pursuant to this requirement, DHCD notified petitioner by letter dated September 22, 1983, of a recertification interview scheduled for October 20, 1983. In the notification letter, Mr. Aikens was instructed to bring various verification documents with him to the interview. Included in the request were documents verifying "Current Income—All Family Members."[2]

---

1. For the period October 1, 1983, through September 30, 1984, for example, HUD Regulations required participants in the Section 8 program to contribute 28% of their gross monthly income after allowance toward housing costs. 24 C.F.R. § 889.105(b) (1983).

2. Mr. Aikens was also instructed to bring: "New lease furnished by landlord, signed and dated" and "Attached 'Addendum to Lease' form, completed by landlord, signed and dated."

At the October 20, 1983 interview, petitioner informed DHCD Housing Program Specialist Barbara F. Terry that his social security benefits, his sole source of current income, had been terminated.[3] Ms. Terry then asked Mr. Aikens how he was paying for his living expenses if he had no income. Mr. Aikens responded that he was paying for his living expenses with money he had accumulated in bank accounts during an earlier period when he had received overpayment of his social security benefits. Based on this information, Ms. Terry scheduled a second recertification interview for October 28, 1983. At this time, petitioner was given a written notice of verification documents needed. The notice of documents needed listed Social Security Statement[s] for "Nov. 1, 1982 to the present Oct. 1, 1983" as well as "Bank statements covering same period." The notice stated, "Please furnish the above information [at] your appointment scheduled for Friday October 28, 1983 at 10:00 AM."

At the October 28, 1983 appointment, Mr. Aikens provided Ms. Terry with further information on his social security income. Mr. Aikens did not, however, proffer documents verifying bank account balances for the period November 1, 1982 through October 1, 1983.[4]

At the end of the October 28, 1983 interview, Ms. Terry informed Mr. Aikens that he was terminated from the Section 8 program, effective November 30, 1983. In a letter dated October 28, 1983, DHCD informed Mr. Aikens that the reason for his termination was his failure "to provide verifications pertinent to the recertification process after receiving notice."[5] The notice also informed Mr. Aikens that he was entitled to a hearing upon written request within 10 days of the date of the letter.

Mr. Aikens requested a hearing on the termination of his benefits by letter dated May 2, 1984. In a subsequent letter dated June 7, 1984, Mr. Aikens explained that his delay in requesting a hearing was because the October 28, 1983 termination notification had been sent originally to his landlord, and received by him only on April 25, 1984. By letter dated June 20, 1984, DHCD denied Mr. Aikens' request for a hearing as untimely.

Mr. Aikens then moved in this court for a stay of termination of his benefits pending review. On December 5, 1984, a motions panel granted Mr. Aikens' petition for a stay pending review, and ordered the record "remanded for a hearing before [DHCD] on the merits of petitioner's claim to the benefits. . . ."

On January 8, 1985, the hearing was held on stipulated facts before DHCD Hearing Officer Lenox Elmore. The hearing focused exclusively on whether DHCD properly terminated Mr. Aikens' Section 8 benefits on October 28, 1983.[6]

By decision dated March 14, 1985, the Hearing Officer affirmed DHCD's termination of petitioner's Section 8 benefits. In so doing, the Hearing Officer reasoned:

3. Income verification documents were requested in a letter dated September 22, 1983, notifying Mr. Aikens that a recertification interview had been set for October 20, 1983.

---

3. No notes or other written record of Ms. Terry's interview with petitioner were maintained. Factual information on the interview is drawn from the record of the January 8, 1985 DHCD hearing on the termination of petitioner's benefits.

4. As at the October 20, 1983 recertification interview, Ms. Terry made no written record of her meeting with petitioner. At the January 8, 1985 hearing, DHCD asserted that Mr. Aikens provided no written verification of his bank accounts at either the October 20 or October 28, 1983 meetings. Mr. Aikens asserted that he told Ms.

Terry orally of the bank account balances at either their October 20 or October 28 interview, and provided written verification of the bank accounts at the October 28 meeting.

5. The October 28, 1983 notice also listed "family failed to provide necessary income for recertification" as a reason for termination.

6. At no time during the hearing did the Hearing Examiner renew DHCD's request that Mr. Aikens provide documents verifying his bank accounts.

4. At the interview on October 28, 1983, Mr. Aikens did not present the required bank statements.

5. It is established procedure for the Section 8 office to request written verification of all family income.

6. Pursuant to 24–CFR–882, it is the responsibility of the participant to provide all required information and documentation when due and/or when requested.

7. It is not the standard operating procedure of the Section 8 office to accept oral submission of information required to effect and complete the recertification process.

8. Federal regulations provide that if the required information needed for recertification is not submitted when due, just cause for termination is established.

On this basis, the Hearing Officer concluded that "the Section 8 office was correct and within its rights to terminate Mr. Aikens' Section 8 housing assistance payments." Accordingly, the Hearing Officer affirmed DHCD's termination of petitioner's Section 8 benefits. This petition for review followed.

## II

The Section 8 housing assistance program is administered for HUD at the local level by "public housing agencies" (PHAs). *See generally* 24 C.F.R. § 882.116 (1983). The regulatory scheme for the Section 8 program places primary responsibility for program administration on the PHA. *Id.* In the District of Columbia, DHCD is the PHA with responsibility for administering the Section 8 program.

Under HUD regulations, the PHA has responsibility, among other things, for conducting reexaminations of family income. 24 C.F.R. § 882.116(m) (1983). The regulations further specify that these reexaminations are to be performed "in accordance with HUD-established schedules and criteria...." *Id.* In applying to participate in

the Section 8 program, the PHA is required to submit to HUD for approval an administrative plan. DHCD has promulgated such an administrative plan. *See* DISTRICT OF COLUMBIA DEPARTMENT OF HOUSING AND COMMUNITY DEVELOPMENT, POLICY AND PROCEDURES FOR THE ADMINISTRATION OF THE SECTION 8 HOUSING ASSISTANCE PAYMENTS PROGRAM—EXISTING HOUSING (October 1983) (ADMINISTRATIVE PLAN); *see also* 24 C.F.R. § 882.204(b)(3)(i) (1983). In the plan, the PHA is required to outline the agency's overall approach and objectives for the program, as well as provide a description of the procedures to be used in carrying out certain administrative functions. *Id.* Among the functions the PHA is required to address in its administrative plan is recertification of incomes. 24 C.F.R. § 882.204(b)(3)(ii) (1983).[7] Similarly, the HUD HANDBOOK provides that "[t]he procedures used by the PHA to [conduct reexaminations of eligibility] must be set forth in its Administrative Plan...." HUD HANDBOOK, ¶ 10–1. Thus, in conducting its annual reexaminations of family income, DHCD—as PHA for the District of Columbia—is required to follow both HUD schedules and criteria, as well as the provisions contained in its ADMINISTRATIVE PLAN.

No HUD regulation, Handbook provision, or DHCD ADMINISTRATIVE PLAN section explicitly outlines the time period a Section 8 recipient is to be afforded to supply income verification information during recertification. Not surprisingly, therefore, petitioner's argument that DHCD violated applicable regulatory authority in this case is based on HUD HANDBOOK and ADMINISTRATIVE PLAN provisions only indirectly related to this issue. First, petitioner asserts that DHCD violated regulatory authority because it failed to commence Mr. Aikens' recertification 90 days prior to the date his lease expired. Second, petitioner argues that his termination was unlawful because DHCD failed to employ third-party proce-

7. Both petitioner and respondent concede that the HUD HANDBOOK constitutes criteria for ad-

ministration of the Section 8 program that DHCD must follow.

dures for verifying his bank accounts. We reject these contentions.

The HUD HANDBOOK contains an extensive discussion of the PHA's responsibilities in conducting reexaminations of the eligibility and rent payment levels of assisted families. HUD HANDBOOK, ¶ 10–1. The HUD HANDBOOK instructs the PHA to conduct reexamination at least annually, *id.,* ¶ 10–2(a), and explains the importance of scheduling examinations so as to insure that they are completed in a timely manner:

> To allow ample time for obtaining all required verifications and to allow the family time to request an informational hearing with the PHA if ineligibility for future assistance is determined, it is strongly recommended that the procedures be initiated approximately 90 days in advance of the date the changes, if any, are to be made effective. This time frame allows the PHA to provide adequate advance notice to both the family and owner of any changes to be made in the family's required rental payment.

HUD HANDBOOK, ¶ 10–2(b).

DHCD's ADMINISTRATIVE PLAN follows the guidance of the HUD HANDBOOK. The ADMINISTRATIVE PLAN provides that "[r]ecertification of the family income ... shall be made annually as of the anniversary date of the lease...." ADMINISTRATIVE PLAN, ¶ III(M)(1). Further, the ADMINISTRATIVE PLAN explicitly directs that "Families and individuals shall be notified of their recertification 90 days prior to their anniversary date." *Id.,* ¶ III(M)(2).

In this case, DHCD failed to notify petitioner of his recertification 90 days prior to the anniversary date of his lease. Mr. Aikens last entered a lease under the Section 8 program on November 1, 1982. Thus, for purposes of his annual recertification, his anniversary date was November 1, 1983. Nevertheless, the first DHCD notice of Mr.

Aikens' recertification was dated September 22, 1983, only 39 days prior to his anniversary date. Petitioner argues that because DHCD failed to observe the 90–day notification requirement in this case, the agency's termination of him was "contrary to law, arbitrary, and abusive."

▮ While it may well have been preferable for DHCD to notify Mr. Aikens of his recertification 90 days prior to his anniversary date, we reject petitioner's contention that this fact alone requires us to reverse the agency's termination of his benefits. Initially we note that the HUD HANDBOOK does not require, but only "strongly *recommends,*" that recertification procedures be initiated *"approximately* 90 days" prior to the anniversary date.[8] In addition, the clear thrust of the 90–day notice requirement is to promote administrative efficiency, not establish a mandatory rule. Indeed, the initial purpose listed for the 90–day notice period is to allow the PHA ample time "for obtaining all required verifications," not to provide program participants with sufficient time to supply them. Further, it is significant that the other reasons for the 90–day notice requirement enumerated in the HUD HANDBOOK—to permit a hearing to be requested, and allow timely notice to all parties of any changes in benefits—do not even relate directly to the verification process.

Moreover, petitioner's argument is, in our view, largely beside the point. The central problem with DHCD's action in this case is not that petitioner was notified of his recertification on September 22, 1983— 39 days prior to his anniversary date. Rather, it is that Mr. Aikens was terminated from the Section 8 program only eight days after being requested to provide extensive bank records.. Thus, even were we to accept petitioner's argument that the 90–day requirement is mandatory, it would

---

**8.** We are mindful that the language in DHCD's ADMINISTRATIVE PLAN is more forceful, stating "families and individuals *shall* be notified of their recertification" 90 days prior to their anniversary date. ADMINISTRATIVE PLAN, ¶ III(M)(2)

(emphasis added). Nevertheless, in light of the other reasons stated in this opinion, we decline to regard this language as establishing a mandatory rule.

not clarify the amount of time to be afforded Section 8 recipients to provide verification information during recertification.[9] Given our conclusion that the central purpose of the 90–day requirement is to promote administrative efficiency, we cannot accept petitioner's contention that the cited regulations establish a steadfast rule requiring us to reverse all terminations made pursuant to recertifications commenced less than 90 days prior to the anniversary date.

Petitioner next claims that DHCD erred in terminating his benefits because the agency failed to employ third-party methods of verifying his bank accounts. We disagree.

As petitioner correctly notes, the HUD HANDBOOK contains an extensive discussion of verification methods. *See generally* HUD HANDBOOK, Chapter 4. The HUD HANDBOOK asserts that "PHAs must use reliable methods of verifying [required information]," *id.*, ¶ 4–5(d), and makes clear that third-party or independent verification "must be used whenever possible since it provides the most reliable results." *Id.*, ¶ 4–5(d)(1). So great is the reliance on third-party verification, in fact, that the HUD HANDBOOK requires that *"[i]f third-party verification cannot be used, the PHA must document in the file why another method was used." Id.* (emphasis in original). Further, the HUD HANDBOOK limits the use of tenant-supplied documents for verification purposes to situations where third-party verification is impossible, and two narrow circumstances not applicable to this case.[10]

■ Petitioner now argues that DHCD's termination of his benefits was unlawful because the agency failed to follow the verification procedures outlined in the HUD HANDBOOK. Implicit in petitioner's argument is the assertion that the verification procedures outline in the HUD HANDBOOK create a duty owed to him by DHCD to use third-party verification methods. We find no basis for this contention. Indeed, the HUD HANDBOOK makes clear that the sole reason for reliance on third-party verification methods is their reliability. Reliable verification is important, the HUD HANDBOOK explains, because

> [i]t is impossible to insure the accuracy of applicants' statements without proper verification and many applicants incorrectly report certain factors, especially income.... [L]ack of adequate verification methods can increase the likelihood of applicants receiving assistance through misrepresentation.

*Id.*, ¶ 4–5(d). Contrary to petitioner's contention, we find no suggestion in the HUD HANDBOOK that DHCD owes a duty to petitioner to employ a particular method of verification. The duty, if any, is owed to HUD. Thus, we find no basis for reversing DHCD's termination of petitioner's benefits in the agency's failure to employ third-party verification methods.

## III

■ Petitioner next claims that DHCD's termination of his Section 8 benefits violated due process. In making this claim, petitioner does not challenge the legitimacy of DHCD's requirement that his bank accounts be verified as part of the recertification process. Rather, petitioner challenges the absence of DHCD rules establishing the time allowed Section 8 participants to provide verification documents during re-

---

**9.** Indeed, as a theoretical matter, a recertification commenced 90 days before a tenant's anniversary date—and terminated the same day—would not violate the 90–day requirement.

**10.** The HUD HANDBOOK provides that the PHA may review documents as a substitute method of verification if third-party verification is impossible, or under the following circumstances:

> (a) To provide the basis for a provisional determination of income that will be subject to third-party verification before a final determination is made.
> (b) To confirm the applicant's statement when the source cannot or will not provide the required verification within a 4 week period.

HUD HANDBOOK ¶ 4–5(d)(3)(a)(b).

certification.[11] Petitioner claims that because no rules on this aspect of recertification were in effect, he had no notice that his Section 8 benefits would be terminated on October 28, 1983, when he failed to provide bank records that had been requested only eight days earlier. Petitioner asserts that in the absence of DHCD rules pertaining to income verification, the termination of his benefits was an exercise of the agency's unfettered discretion, and thus violative of due process. We agree.

It is well established that participants in the Section 8 program, like other recipients of federally funded housing assistance, have due process rights in the termination of their benefits. *Simmons v. Drew,* 716 F.2d 1160, 1162 (7th Cir.1983) (persons admitted to Section 8 program have due process rights in benefits); *see also Ressler v. Pierce,* 692 F.2d 1212, 1215 (9th Cir.1982) (applicant for Section 8 benefits has due process rights in benefits); *Geneva Towers Tenants Organization v. Federated Mortgage Investors,* 504 F.2d 483, 489 (9th Cir. 1974) (participants in federally funded 221(d)(3) housing assistance program have due process rights in benefits); *Joy v. Daniels,* 479 F.2d 1236, 1240 (4th Cir.1973) (same).

This court has repeatedly recognized "the danger of arbitrary administrative action based upon unarticulated and unannounced standards...." *Miller v. District of Columbia Board of Appeals and Review,* 294 A.2d 365, 369 (D.C.1972); *see also Woods v. District of Columbia Nurses' Examining Board,* 436 A.2d 369, 374 (D.C. 1981); *Proctor v. Hackers' Board,* 268 A.2d 267, 270 (D.C.1970). In the licensing context, we have noted that "unless there are some standards relating the prior conduct of an applicant to the *particular* ... activity for which he seeks a license, the power to deny a license inevitably becomes an arbitrary, and therefore unlawful, exercise of judgment by one official...." *Miller v. District of Columbia Board of Appeals and Review, supra,* 294 A.2d at 369.

The importance of clear rules has also been recognized in the area of welfare assistance. Indeed, one court has noted:

> [D]ue process requires at least that the assistance program be administered in such a way as to insure fairness and to avoid the risk of arbitrary decisionmaking. Typically this requirement is met through the adoption and implementation of ascertainable standards of eligibility.

*Carey v. Quern,* 588 F.2d 230, 232 (7th Cir.1978); *see also Daniels v. Woodbury County, Iowa,* 742 F.2d 1128, 1134 (8th Cir.1984). In *White v. Roughton,* 530 F.2d 750, 753–54 (7th Cir.1976), the administrator of a welfare assistance program acknowledged that no written standards or regulations for eligibility to the program existed and that "he and his staff determine eligibility based on their own unwritten personal standards." The court concluded that "[s]uch a procedure, vesting virtually unfettered discretion in [the program administrator] and his staff, is clearly violative of due process." *Id.; see also Holmes v. New York City Housing Authority,* 398 F.2d 262, 265 (2d Cir.1968); *Hornsby v. Allen,* 326 F.2d 605, 610 (5th Cir.1964); *United States v. Atkins,* 323 F.2d 733, 742 (5th Cir.1963).[12]

---

**11.** As noted earlier, HUD regulations require that DHCD include procedures for recertification in the agency's ADMINISTRATIVE PLAN. *See* 24 C.F.R. § 882.204(b)(3).

**12.** The danger of arbitrary administrative action can exist when the agency has failed to promulgate either substantive standards or procedural rules. As one court has noted:

> '[D]ue process means that administrators must do what they can do to structure and confine their discretionary powers through safeguards, standards, principles and rules.'

... This principle employs no balancing approach but simply holds that due process requires some standards, both substantive and procedural, to control agency discretion. *Historic Green Springs, Inc. v. Bergland,* 497 F.Supp. 839, 854 (E.D.Va.1980) (citation omitted); *see generally* K. DAVIS, ADMINISTRATIVE LAW TREATISE § 7.26 (2d ed. 1983). As discussed below, the defect in this case is that DHCD failed to promulgate a procedural rule specifying the amount of time Mr. Aikens would be given to supply required income verification documentation.

Applying these principles to this case, we conclude that DHCD's termination of petitioner's benefits violated due process. As both parties readily acknowledge, DHCD has adopted no rule establishing the time allowed Section 8 participants to supply income verification documents during recertification. Because of the absence of such a rule, petitioner was without notice that his failure to provide bank records at his October 28, 1983 interview—only eight days after first being requested to do so—would result in termination of his benefits.[13] Without rules governing DHCD's administration of the recertification process, the agency's termination of Mr. Aikens' Section 8 benefits was an exercise of "unfettered discretion," and violative of due process.

DHCD responds to petitioner's due process claim by arguing that Mr. Aikens' Section 8 benefits were properly terminated after he failed to cooperate with the agency during recertification. DHCD notes that the HUD Handbook provides that "[f]ailure of the family to cooperate [in the reexamination of income] is a ground for terminating assistance." HUD HANDBOOK ¶ 10–2. Further, DHCD points out that the ADMINISTRATIVE PLAN adopted by the agency clearly states, "Failure of an assisted family to cooperate in providing information necessary [for] the required interim redeterminations is a ground for

termination of assistance." ADMINISTRATIVE PLAN, § III(N)(4).[14] DHCD argues that these provisions gave petitioner notice that his failure to cooperate in the recertification process could result in his termination. Further, DHCD asserts that petitioner's appearance at his October 28, 1983 recertification interview without the requested bank records constituted a failure to cooperate justifying his termination.

DHCD's argument that the agency's termination of petitioner's Section 8 benefits did not violate due process because of regulatory authority imposing a duty to cooperate in recertification is unavailing. The provisions cited by DHCD do not clarify the time allowed Section 8 participants to supply income verification documents during recertification. Thus, they failed to put petitioner on notice that his Section 8 benefits would be terminated if he did not provide requested bank records at his October 28, 1983 interview. For this reason, the regulatory provisions cited by DHCD fail to accord petitioner the due process rights to a fair procedure to which he is entitled.[15]

Thus, we remand this case to DHCD with instructions to reinstate petitioner's Section 8 benefits, and to develop procedures specifying the time allowed Section 8 participants to supply income verification documents during recertification.[16]

*So ordered.*

**13.** By contrast, petitioner did receive notice that his failure to appear promptly for his recertification interviews would result in his termination from the program. The September 22, 1983 notice sent to petitioner of his October 20, 1983 interview stated, "All persons canceling more than two appointments shall be subject to termination from the Section 8 program."

**14.** Similarly, DHCD notes HUD regulations which provide:
A family receiving housing assistance under this program shall be responsible for fulfilling all of its obligations under the Certificate of Family Participation issued to it by the PHA....
24 C.F.R. § 882.118 (1983).
Petitioner's Certificate of Family Participation specifies that "[t]he family agrees to perform all its obligations under the Housing Assistance Payments Program including the obligations to

(a) provide such Family income information and records as may be required in the administration of the program...."

**15.** DHCD's authority to terminate Mr. Aikens for failure to supply required income verification information during recertification is not in dispute in this case. Indeed, DHCD has clear authority to do so. We remand solely because DHCD failed to give Mr. Aikens notice of the amount of time he would have to supply required income verification documentation.

**16.** Our holding in this case pertains only to the income verification aspect of DHCD's annual recertification process. Nevertheless, DHCD should recognize that further due process challenges will likely arise in the future if the agency's procedures are similarly lacking in other areas of program administration. Thus, we

NEBEKER, Associate Judge, dissenting:

The majority concludes that the Department of Housing and Community Development's (DHCD) termination of petitioner's benefits violated due process. In my view, he has received an over-supply of due process and perhaps benefits to which he was not entitled. Because of an order of this court on December 5, 1984, petitioner has received monthly housing benefits since that month.[1] Apparently benefits were not paid from April to November 1984; that is the only period for which the majority has ordered reinstatement. It is the period which we use to compel agency rulemaking through, I might add, a constricted and erroneous view of the record. I therefore dissent.

Initially, the majority misapprehends the nature of petitioner's claimed benefits. Petitioner received Section 8 housing assistance payments pursuant to a contract between DHCD and petitioner's landlord. According to the DHCD's Administrative Plan, a determination of the amount of housing assistance payments "shall be made annually as of the anniversary date of the lease and the HAP contract." Administrative Plan, § III(M)(1). During the annual contract renewal, or recertification process, the recipient of benefits has the burden of showing continued eligibility before recertification can occur. Thus, petitioner is not automatically entitled to recertification; he must provide all required documents necessary to demonstrate continued eligibility before recertification can occur and the contract with DHCD can be renewed.

Secondly, the majority erroneously concludes that "petitioner was without notice that his failure to provide bank records at his October 28, 1983 interview—only eight days after first being requested to do so—

urge DHCD to carefully consider the scope of procedures it develops as a result of this opinion.

1. On July 18, 1986, the Chief Deputy Clerk of this court, pursuant to my request, inquired of the Office of Corporation Counsel about what payments had been made to petitioner and for

would result in termination of his benefits." *Ante* at 719. The record contradicts this conclusion. The Administrative Plan plainly states that "Failure of an assisted family to cooperate in providing information necessary [for] the required interim redeterminations is a ground for termination of assistance." Administrative Plan, § III(N)(4). Furthermore, the Administrative Plan provides that "[i]f a participant comes for his/her recertification appointment and does not bring with him/her all necessary documents, he/she is advised what is needed to complete the process and is rescheduled." Administrative Plan, § III(M)(6). In this case, petitioner was informed on September 22, 1983 that the Section 8 Housing Assistance Contract with his landlord would soon expire and that, to complete recertification, it would be necessary for him to provide documents verifying his current income at his October 20, 1983 recertification interview. Petitioner failed to provide the required documents at the October 20, 1983 interview; he was then given written notice of the documents that he needed to produce at the rescheduled interview on October 28, 1983. At the rescheduled interview, petitioner again failed to produce the required documents and thus was informed of his termination from the Section 8 program. Termination did not eventuate until April 1984.

Lastly, the majority reasons that the essence of petitioner's due process claim is on the inadequate notice he was afforded to produce the required documents and that providing him only with days was "an exercise of 'unfettered discretion.'" *Ante* at 719. Assuming, *arguendo*, that petitioner was not given adequate notice, on December 5, 1984, we corrected any such deficien-

what period since December 1984. In a letter dated July 31, 1986, the Office of Corporation Counsel responded that Mr. Aikens has received housing assistance benefits "for every month from December 1984 to date." No contrary facts are asserted.

cy by remanding the record "for a hearing before the respondent agency on the merits of petitioner's claim to the benefits...." Order, No. 84–855 (Dec. 5, 1984). The majority's attempt to sidestep the remedial effect of our December 5, 1984 order blinks reality. A hearing was held on January 8, 1985 at which the hearing officer stated, "the purpose of this hearing is to determine the facts, to give statements of facts, and to reveal all pertinent information." Tr. at 2, Jan. 8, 1985. We ordered the hearing on the merits, and petitioner had the burden of producing the documents he initially failed to produce on October 20 and again failed to produce on October 28. The majority's statement that "at no time during the hearing did the Hearing Examiner renew DHCD's request that Mr. Aikens provide documents verifying his bank accounts," *ante* at 714 n. 6, is entirely unavailing because petitioner had notice, as early as September 22, 1983, of the documents he was required to produce and of the purpose of the hearing we ordered on remand.

Furthermore, it is important to note that petitioner's counsel at the hearing proffered bank statements covering a time period subsequent to the initial recertification date. Of course, these documents were irrelevant because they did not cover the time period in question. Nevertheless, petitioner's counsel decided that this proffer was sufficient by acknowledging "we're agreeing that this satisfies our need for a hearing in this case." Tr. at 12, Jan. 8, 1985. Thus, the relief the majority orders for petitioner is a fourth opportunity to proffer the documents that he was required to produce on October 20, 1983.

We should affirm the decision on remand because petitioner had abundant notice—over a year. We improperly reach back beyond our December 5, 1984 order in requiring rulemaking. That order remedied any deficiency in the 1983 process, and all that is before us is the merits of the March 1985 decision—an eminently correct one.