**Lula J. WEBB, Petitioner,**

v.

**DISTRICT OF COLUMBIA DEPARTMENT OF HUMAN SERVICES, Respondent.**

**No. 89–AA–1157.**

District of Columbia Court of Appeals.

Argued Dec. 4, 1990.
Decided Dec. 30, 1992.

---

Susan A. Turner, with whom Robert Gregory was on the brief, for petitioner.

Edward E. Schwab, Asst. Corp. Counsel, with whom Herbert O. Reid, Sr., Corp. Counsel at the time the brief was filed, and Charles L. Reischel, Deputy Corp. Counsel, were on the brief, for respondent.

Before ROGERS, Chief Judge and WAGNER, Associate Judge and PRYOR, Senior Judge.

PER CURIAM:

Petitioner seeks review of a decision of the Department of Human Services (DHS), an agency of the District of Columbia, terminating homemaker services formerly provided her and her spouse under a program funded by the federal government with a block grant to the city pursuant to Title XX of the Social Security Act, 42 U.S.C. § 1397 (1992) *et seq.*[1]  Petitioner

---

1. Homemaker services are:

any or all of the following services, depending on need: basic housekeeping and home management tasks, child care and supervision, as required by the disability of the primary caretaker or his or her temporary absence from the home because of hospitalization, incarceration, or any other temporary absence from the home; assistance with management of personal affairs; personal care services that do not require nursing [.]

29 DCMR § 1499 (1987), *amended by* 37 D.C. Reg. 4706 (1990); *see also* 42 U.S.C. § 1397 (1983) (authorizing block grants to the states); 42 U.S.C. § 1397a(a)(2) (1983) (authorizing use of block grant funds for day care services for adults, the aged, and physically handicapped, *inter alia* ).

argues that termination of benefits was unlawful because it was based on an agency policy not promulgated in accordance with the provisions of the District of Columbia Administrative Procedure Act (DCAPA). D.C.Code §§ 1–1501 to –1542 (1981) (DCAPA). We agree. Therefore, we remand the case to DHS with instructions to reinstate petitioner's benefits and to determine any future eligibility based on procedures adopted in compliance with the DCAPA.[2]

## I

Through the In–Home Support Program administered by DHS, petitioner, Lula Webb, and her husband, Wilbur Webb, received homemaker services from 1983 until October 31, 1988. The Webbs needed the services to assist Mrs. Webb, who at 64 years of age and in poor health, was caring for her then 78 year old husband, who is paralyzed and unable to speak. The level of services provided the Webbs between 1983 and 1988 was increased and decreased by DHS as circumstances required. Following a period of hospitalization in September 1988, Mrs. Webb requested that DHS continue the increased level of services provided during her hospitalization. An agency representative went to the Webbs' home to make an assessment of the family's needs and to obtain income information. Immediately thereafter, the agency terminated the Webbs' benefits effective October 31, 1988 because their combined income slightly exceeded the eligibility guidelines used by the agency.

The Webbs had a hearing, following which the hearing examiner issued a proposed order sustaining the agency's decision to terminate benefits. Although the hearing examiner concluded that the guidelines used by the agency in denying further benefits to the Webbs had not been adopted in accordance with legislative and administrative requirements, he determined that it was proper for the agency to use

them. DHS adopted the recommendation of the hearing examiner and sustained the agency's decision. Petitioner filed a petition for review in this court.[3]

## II

DHS concedes that the guidelines used to terminate the Webbs' benefits were not adopted pursuant to the rulemaking provision of the DCAPA (D.C.Code § 1–1506 (1981)). However, DHS argues that: (1) the issue is not subject to review because it was not raised before the agency; (2) the adoption of eligibility guidelines are not subject to the rulemaking provision of the DCAPA; and (3) the issue is moot given the rules which have been adopted subsequent to the agency's final decision in this case. We reject each of these arguments.

### A.

■ Absent exceptional circumstances, this court will not review issues not raised at the administrative level. *Goodman v. District of Columbia Rental Hous. Comm'n,* 573 A.2d 1293, 1301 (D.C.1990). The Webbs questioned at the administrative hearing the apparent absence of valid regulations governing their continued eligibility for homemaker services. In addition, the Chief Hearing Examiner invited petitioner to raise the issue of the lack of valid regulations. Both the hearing examiner and the Chief Hearing Examiner discussed in detail the problems created by the lack of definitive regulations, which indicates that petitioner raised the issue sufficiently that both officials felt compelled to address it. Finally, the Hearing Examiner's findings appear to recognize that DHS's guidelines had not been promulgated in accordance with administrative and legislative requirements. Nevertheless, he relied upon the policy in sustaining the termination decision. In light of the examiner's comments at the hearing, as well as the hearing examiner's findings, the agency

---

**2.** Petitioner also argues that the agency engaged in retaliatory action in terminating her services. In light of our disposition of the other issues, we need not reach this issue.

**3.** Although Mr. and Mrs. Webb are listed as parties to the administrative proceeding, only Mrs. Webb filed for review by this court.

had a full opportunity to consider the matter in making its ruling and to state its reasons for the decision. Thus, the purpose for strict applicability of the rule against consideration of issues not raised at the administrative level have been met. *See Goodman,* 573 A.2d at 1301. Therefore, we conclude that the issue is preserved for review.

■ We also reject respondent's argument that the challenged policies governing homemaker services are not subject to the rulemaking requirements of the DCAPA because they are consistent with federal guidelines. An agency is not engaged in rulemaking for purposes of the DCAPA when it follows guidelines mandated by the federal government. *Hamer v. Department of Human Servs. of the District of Columbia,* 492 A.2d 1253, 1258 (D.C.1985); *Wolston v. District of Columbia Dep't of Human Resources Social Servs. Admin.,* 291 A.2d 85, 87 (D.C.1972). However, respondent was not following federally mandated rules in implementing the policies governing its homemaker services program. Respondent concedes that Title XX and the federal implementing regulations (45 CFR §§ 96.70–96.73 (1989)) are silent on eligibility standards for recipients of benefits provided by the city through funds from block grants. Moreover, the vague federal guidelines which delegate to the states almost total authority in the disbursement of block grant funds are not the type of specific guidelines which were addressed in *Wolston* and *Hamer.* Those cases held that where the District government was compelled to adhere to detailed federal regulations as a condition of participation in Federal programs, the federal regulations would not be treated as "rules" and therefore need not be published in compliance with the DCAPA. Rather, the court viewed the federal regulations as governing the program, and thus federal publication requirements would apply. *Hamer,* 492 A.2d at 1257–58. Since the DHS income guidelines were not federally mandated, the rule in the *Hamer* and *Wol-*

*ston* cases is inapplicable. We must therefore consider whether the income guidelines were "rules" within the terms of the DCAPA to determine whether publication in the District of Columbia Register was required.

■ Each state has the power to promulgate its own guidelines for administration of programs established with block grant funds.[4] In setting policies to implement such programs, District of Columbia agencies are bound by the rulemaking requirements of the DCAPA. D.C.Code § 1–1506 (1981). A "rule" is defined as "the whole or any part of any Mayor's or agency's statement of general or particular applicability and future effect designed to implement, interpret or proscribe law or policy or to describe the organization, procedure, or practice requirements of the Mayor or of any agency." D.C.Code § 1–1502(6) (1981). Policies implementing the Mayor's or DHS's policies governing its homemaker services program fall within the statutory definition of a rule. *See Rorie v. District of Columbia Dep't of Human Resources,* 403 A.2d 1148, 1153 (D.C.1979) (regulations governing emergency assistance benefits are rules within the meaning of the DCAPA). Since it is conceded that the eligibility guidelines used to deny benefits in this case were not promulgated in compliance with the DCAPA, the agency's action based on the guidelines is invalid. *Junghans v. Department of Human Resources of the District of Columbia,* 289 A.2d 17, 25 (D.C. 1972).

### B.

Respondent argues that petitioner's case is moot because subsequent to the DHS's decision in this case, the agency promulgated, pursuant to the DCAPA, rules governing the program which are the same as those used to deny petitioner benefits. *See* 29 DCMR § 1451 (1987), *amended by* 37 D.C. Reg. 4705 (1990). We disagree. We have rejected the claim that the "post hoc" promulgation of rules in the manner required by the DCAPA validates prior agen-

---

**4.** The District of Columbia is defined as a state for purposes of receipt of funds under the Title XX block grant program. *See* 45 CFR § 96.2(d) (1990).

cy action under an invalid regulation. *Rorie, supra,* 403 A.2d at 1154. Moreover, contrary to DHS's assertion, the remedy available for aggrieved parties under such circumstances is not limited to remand to the agency for rulemaking. *See id.* (remand to DHS for consideration of emergency assistance request under federal standards where denial based on invalid local regulation); *Aikens v. District of Columbia Dep't of Hous. and Community Dev.,* 515 A.2d 712, 719 (D.C.1986) (remand with instructions to reinstate benefits as well as to develop rules governing recertification process for housing benefits); *Junghans, supra,* 289 A.2d at 27 (agency's order reducing public assistance benefits reversed).[5] Therefore, the subsequent adoption of rules by DHS does not preclude our review and consideration of petitioner's claim.

This court has wide latitude in disposing of a petition for review of agency action. Under D.C.Code § 1–1510(a) (1981), this court has the power "to affirm, modify, or set aside the order or decision complained of, in whole or in part, and, if need be, to remand the case for further proceedings, as justice may require." Petitioner seeks reinstatement and restitution of benefits denied since October 1989. Petitioner's first request, reinstatement of benefits, is among the remedies within the statutory power which this court has ordered under similar circumstances. *See Aikens, supra,* 515 A.2d at 719. We conclude that reinstatement of benefits pending a determination of continued eligibility under properly promulgated regulations is warranted.

■ On the other hand, we are not persuaded that restitution is an appropriate remedy, given the pertinent equitable considerations which must be weighed. Similar considerations, which led us to deny restitution to welfare recipients who successfully challenged an invalidly promulgated regulation which resulted in reduction or termination of their benefits, lead to the same result we reach here. *See Archer v. District of Columbia Dep't of Human Resources,* 375 A.2d 523, 528–29 (D.C. 1977).[6] In contrast to the welfare assistance program, homemaker services are not an entitlement. The District government could discontinue its use of block grant funds for this purpose at any time. Thus, the reasoning of *Archer* becomes even more forceful in this context.

From 1981 until 1990, DHS has operated its homemaker services program based on eligibility guidelines set by the agency. Although further benefits were denied petitioner based on the invalid policy, benefits were also conferred on petitioner and other participants based on that same policy. While we do not condone the agency's failure to implement its program through the DCAPA's rulemaking procedure, we are constrained to recognize as an equitable consideration that the agency's guidelines served to provide some reasonable basis for distribution of scarce resources among the needy. On the other hand, after realizing benefits under the agency's income guidelines, it would be inequitable for petitioner to receive restitution for benefits denied once her income exceeded the eligibility level set by those guidelines. In view of this equitable consideration and those iden-

5. In *Junghans,* it was anticipated that the agency would publish rules relating back to August 1, 1970, the date of denial of benefits, since there was no earlier valid regulation upon which to predicate the formula for eligibility for public assistance. *Junghans, supra,* 289 A.2d at 26.

6. In *Archer,* we said:
   On the one hand, in the nature of the case we have badly needed income lost in the past to the public assistance recipients. On the other hand, "retroactive payments become compensatory rather than remedial" and "the coincidence between previously ascertained and existing needs become less clear." It has been pointed out that "[r]etroactive payment [might] go to persons no longer on the welfare [payment] rolls, thereby preventing already inadequate [local] funds from being channeled to the persons whose needs are immediate and urgent." Beyond this, it has been found that the administrative costs which would be involved might well be "out of proportion to the benefits conferred, [and] will also impose additional strains upon an administrative mechanism already overburdened by the daily task of coping with the substantial demands of welfare administration."
   375 A.2d at 528 (internal citations omitted).

tified in *Archer*, we conclude that restitution is inappropriate.

For the foregoing reasons, we reverse the decision of DHS and remand the case to DHS with instructions to reinstate petitioner's homemaker benefits as of the date of their termination in 1988, and to determine her eligibility for benefits thereafter, if any, based on procedures adopted in accordance with the DCAPA.

*Reversed and remanded.*