Larry TEACHEY, et al., Appellants,

v.

John A. CARVER, et al., Appellees.

Nos. 98–SP–472, 98–SP–503, 98–SP–556.

District of Columbia Court of Appeals.

Argued April 14, 1999.

Decided Aug. 26, 1999.

Hastings Jones, Public Defender Service, for appellants.

Susan B. Menzer, Assistant United States Attorney, with whom, Wilma A. Lewis, United States Attorney, and John R. Fisher, Thomas J. Tourish, Jr., and Robert D. Okun, Assistant United States Attorneys, were on the brief, for appellees John A. Carver, Margaret Quick, Polly Nelson and Marcelino Cruces.

Charles Reischel, Deputy Corporation Counsel, and Mary L. Wilson, Asst. Corporation Counsel, filed a response to appellants brief on behalf of appellee Margaret Moore.

Before TERRY and SCHWELB, Associate Judges, and PRYOR, Senior Judge.

SCHWELB, Associate Judge:

The principal question presented in these consolidated appeals is whether the District of Columbia Trustee for Offender Supervision[1] exceeded his legal authority by unilaterally promulgating a "directive" requiring the District of Columbia Board of Parole ("BOP" or "the Board") to issue parole violator warrants in situations in which the Board's regulations render that decision discretionary. The Trustee had reason to believe that prior to the issuance of Directive No. 001, prisoners whose parole should have been revoked had been allowed to remain on the streets and had committed additional violent crimes. The Directive was obviously issued to remedy this situation, and the procedures that it ordains may well be a long overdue step in

---

1. The Office of the District of Columbia Pretrial Services, Defense Services, Parole, Adult Probation and Offender Supervision Trustee was created by the National Capital Revitalization and Self–Government Improvement Act (the "Revitalization Act"), D.C.Code §§ 24–1231 *et seq.* (Supp.1999), which became effective on August 5, 1997. Appellee John A. Carver assumed his duties as Trustee for Offender Supervision on October 2, 1997.

the right direction. Nevertheless, we are compelled to conclude that the Revitalization Act, see note 1, *supra,* does not authorize the Trustee to override the Board's validly issued regulations without following the appropriate statutory procedures. We therefore reverse the trial judge's orders upholding Directive No. 001.

## I.

The District of Columbia parole statute authorizes the BOP, *inter alia,* to "determine if and when to terminate parole or conditional release or to modify the terms or conditions of parole or conditional release." D.C.Code § 24–201.2(a) (1996). The statute further provides that if the Board, or any member of the Board, has reliable information that a prisoner has violated his parole, then the "said Board, or any member thereof, ... may issue a warrant to any officer hereinafter authorized to execute the same for the retaking of such prisoner." D.C.Code § 24–205.

Pursuant to its authority under D.C.Code § 24–201.3, the Board has provided by duly promulgated regulation as follows:

The Board or a member of the Board may elect to issue a violator warrant in those cases where the only violation of parole is the alleged new offense for

which the parolee has been arrested. The Board shall make a written determination as to whether there is probable cause to believe that the parolee has committed the crime for which he or she was arrested and as to the following:

(a) Risk to the community if the parolee is allowed to remain on parole;

(b) History of the parolee while under supervision;

(c) Whether the parolee has other outstanding criminal charges; and

(d) Seriousness of the offense for which the parolee has been arrested.

28 DCMR § 217.3 (1987).

The Board's regulations further provide that where there is probable cause to believe that a parolee has committed or attempted to commit one or more of certain enumerated criminal offenses the Board "*shall* issue a violator warrant." 28 DCMR § 217.7 (emphasis added).[2] Where such probable cause relates to an offense not enumerated in § 217.7, however, the issuance of a warrant is discretionary, and the Board is required to base its decision on the criteria set forth in 28 DCMR §§ 217.3 and 217.6.[3]

On October 28, 1997, the Trustee issued Directive No. 001, which provides in perti-

---

**2.** These offenses include:

(1) D.C.Code § 22–2101 (Abduction);
(2) D.C.Code § 22–501 (Aggravated Assault);
(3) D.C.Code § 22–401 (Arson);
(4) D.C.Code § 22–1801 (Burglary);
(5) D.C.Code § 6–2311, § 22–3202 and § 22–3203 (Firearms Violations);
(6) D.C.Code § 22–501, § 22–2401 or § 22–2403 (Homicide);
(7) D.C.Code § 22–2901 (Robbery);
(8) D.C.Code § 22–2801 and § 22–3501 (Sexual Assault);
(9) D.C.Code § 33–541, § 33–542, § 33–543 and § 33–603 (Felony Drug Law Violations); or
(10) the use, possession, or distribution of phencyclidine (PCP).

**3.** 28 DCMR § 217.6 provides as follows:

With respect to the discretionary issuance of a violator warrant, the following shall apply:

(a) Action shall be taken in context of an analysis of all pertinent information and circumstances surrounding the alleged violation and shall consider the history of the parolee while under supervision, including, among other factors, the following:
(1) Any previous drug law violations;
(2) Employment status;
(3) Enrollment and pattern of participation in treatment programs;
(4) Family stability;
(5) Other violations of parole conditions; and
(6) Whether the alleged violations represent a pattern of abuse which is indicative of serious problems with parole adjustment; and
(b) It shall be the general policy of the Board to issue a violator warrant if there is evidence of illegal distribution, purchase, possession, or use of any controlled substance.

nent part that if a parolee is charged with a criminal offense while under parole supervision, then "[i]n any such case in which a judicial officer finds probable cause that a parolee has committed a new crime, the Board of Parole will adopt that finding of probable cause and within one business day issue a parole [violator] warrant." The requirement that a warrant be issued upon a judicial finding of probable cause is not limited to cases in which that finding relates to one of the offenses enumerated in 28 DCMR § 217.7. The Directive thus purports to make issuance of a warrant mandatory under circumstances in which it was previously discretionary.

Appellants Larry Teachey, Vernon Powell, and Brian A. Ellison were all on parole at the time Directive No. 001 was promulgated. Each appellant was thereafter re-arrested for an offense as to which issuance of a warrant was discretionary under the Board's existing regulations. In conformity with the requirements of Directive No. 001, the Board issued parole violator warrants against all three appellants. By separate petitions for writs of habeas corpus,[4] the appellants challenged the Trustee's authority to issue Directive No. 001 and the Board's authority to issue warrants pursuant to that Directive. The trial judge summarily denied each appellant's petition, ruling that the Directive was a permissible exercise of the Trustee's authority under the Revitalization Act "to direct the actions of ... the Board of Parole." *See* D.C.Code § 24–1232(b)(2). These timely appeals followed.

## II.

■ By the time these appeals were argued, none of the appellants was being detained on a parole violator warrant issued by the Board. Teachey had entered a guilty plea to a new offense, and his

parole had been revoked. After considering the new charges against Powell and Ellison, the Board decided that each man should remain on parole.[5] Arguing that "there are no collateral consequences flowing from their pre-hearing detention and [that] the issues are not capable of repetition, yet evading review *with respect to these particular appellants*" (emphasis added), the appellees ask us to dismiss these appeals as moot.

■ In *Tyler v. United States,* 705 A.2d 270 (D.C.1997) (en banc), we reversed a pretrial detention order in spite of the fact that, while the appeal was pending, the defendant had entered a plea of guilty to the offense for which he had been detained. We thus decided the merits of the issue even though the defendant would not personally benefit from a reversal of the detention order. We stated in *Tyler:*

> There is no doubt that even if Tyler were to prevail on the merits of his appeal, the result would have no impact on him in this case because he is no longer being detained pretrial, but is serving the sentence imposed as a result of his guilty plea. However, we do not apply a strict rule of mootness to dismiss a case because it no longer affects the particular appellant, if it presents a matter of importance that is likely to recur, yet evade review with respect to others similarly situated. *Lynch v. United States,* 557 A.2d 580, 582 (D.C. 1989) [en banc]; *contra, Murphy v. Hunt,* 455 U.S. 478, 482, 102 S.Ct. 1181, 71 L.Ed.2d 353 (1982).[6] Specifically as concerns issues arising from pretrial detention, notwithstanding the defendant's right to expedited consideration by way of a motion for summary reversal, we have recognized that it is altogether probable that the limited period during

---

**4.** Named as respondents in these petitions were the Trustee, three members of the BOP, and the Director of the District of Columbia Department of Corrections.

**5.** Ellison's parole was revoked, but he was immediately reparoled.

**6.** Our approach to mootness issues is less rigorous than that of the federal courts, which require a showing that the issue is capable of repetition but evades review with respect to the individual petitioner. *See McClain v. United States,* 601 A.2d 80, 81–82 (D.C.1992).

which a person may be detained pretrial could expire before an appeal is heard on the merits. *See United States v. Edwards*, 430 A.2d 1321, 1324 n. 2 (D.C. 1981) (en banc).

*Id.* at 273.

The issue presented in these appeals is just as capable of repetition as was the question that we considered in *Tyler.* It would likewise be as difficult in this type of case as it was in *Tyler* to obtain effective judicial review during the period of detention that precedes the parole revocation hearing. The appellees' claim that these appeals are moot is thus at odds with our en banc decision in *Tyler.*

Indeed, this case presents more compelling reasons than *Tyler* did for declining to dismiss the appeals as moot. In *Tyler,* the dissenting judges argued that "the chance of recurrence of the events presented here is slim." *Id.* at 281. The two concurring judges agreed that the precise issue was unlikely to arise again in the same form. *Id.* at 279. In this case, on the other hand, recurrence of the issue here presented is inevitable. If we were to dismiss the present appeals as moot, then pursuant to Directive No. 001, parole violator warrants could, and probably would, be issued automatically, and without the exercise of BOP discretion, even in cases in which, under the regulations, the issuance of such a warrant is discretionary. If, as we conclude below, the Trustee lacked the authority to override the Board's regulations, then it is appropriate for this court so to hold in this case, in order to ensure that, in the future, the Board eschews the automatic issuance of a warrant upon a judicial finding of probable cause, and instead exercises its discretion where the regulations require it to do so.

## III.

▇ The Trustee and the BOP next contend that the orders appealed from should be affirmed because the Board's issuance of parole violator warrants against the appellants was consistent with its regulations. Focusing on the sequence of the first two sentences of 28 DCMR § 217.3 (quoted at page 1001, *supra*), the appellees assert that the regulations permit the Board, or a member of the Board, to issue a parole violator warrant before exercising discretion as directed in § 217.3 and before issuing the required written determination. The detention of the appellants was therefore proper, according to the appellees, notwithstanding the lack of a prior written determination, and in spite of the lack of any showing that the Board in fact exercised discretion as required by §§ 217.3 and 217.6.

The premise on which the Trustee and the BOP predicate this contention is questionable. We do not believe that the sequence of the sentences in § 217.3 demonstrates an intention on the part of the Board to permit the issuance of a warrant, with its consequent restriction of the liberty of the citizen, before the exercise of discretion, and in advance of the consideration of the four enumerated discretionary factors which the regulation explicitly requires. *See also* § 217.6. Under the theory espoused by the appellees, a parolee could legitimately be arrested on a warrant without the prior exercise of discretion, but would have to be released within some unspecified time if the Board's subsequent inquiry into factors relevant to its exercise of discretion led the Board to believe that the warrant should not have been issued. Although detention pursuant to a parole violator warrant is regulatory rather than punitive in nature, the appellees' position has a certain Alice–in–Wonderland quality [7]—detention may be ordered, according to the appellees, before, rather than after, the requisite assessment of discretionary factors informing the decision whether or not to detain has been completed.

---

**7.** *Cf.* "Sentence first—verdict afterward." Lewis Carroll, Alice's Adventures in Wonder- LAND (1865).

But even if—and it is a big if—we were to accept as permissible the appellees' unorthodox sequence of arrest first, exercise of discretion last, we still could not affirm the orders appealed from without first dealing with the conflict between Directive No. 001 and the Board's existing regulations. Under these regulations, as construed by the appellees (including the Board), the Board had the authority, *in the exercise of its discretion,* to issue the parole warrants before making the written determination required by § 217.3. The appellees cannot reasonably contend (and do not contend) that under the regulation, the Board was obliged to issue the warrant prior to making the discretionary determination specified in the regulation. Even under the appellees' construction, the Board had the right under § 217.3 to exercise discretion before issuing a parole violator warrant. Under Directive No. 001, on the other hand, the Board was obliged to issue each warrant upon a judicial finding of probable cause, and had no discretion to decline to do so. In fact, there is no evidence that the Board exercised its discretion either before or after issuing the parole violator warrants; on the contrary, the Board simply complied with the Directive.

 An exercise of discretion must be founded upon correct legal standards. *See, e.g., In re J.D.C.,* 594 A.2d 70, 75 (D.C.1991). "A district court by definition abuses its discretion when it makes an error of law," *Koon v. United States,* 518 U.S. 81, 100, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996), and the same is true of the BOP. Where a judge (or agency) is invested with discretion to choose between permissible alternatives, but does not recognize the existence of such discretionary authority and therefore fails to exercise it, then that failure constitutes an abuse of discretion. *See, e.g., Johnson v. United States,* 398 A.2d 354, 363 (D.C.1979); *In re T.M.,* 665 A.2d 207, 212 (D.C.1995). We agree with the appellants that "[a] policy mandating the issuance of warrants for all offenses is contrary to a regulation mandating the issuance of warrants for some offenses, and mandating the exercise of discretion for [other offenses]." Accordingly, if the Board's obligation under its regulations to exercise discretion survived the promulgation of Directive No. 001, then the automatic issuance of the warrants following the rearrest of the appellants and the judicial finding of probable cause constituted an abuse of discretion.

## IV.

 The Revitalization Act, as we have seen, provides that the Trustee "shall ... [h]ave the authority to direct the actions of [, *inter alia,*] the Board of Parole of the District of Columbia ...." D.C.Code § 24–1232(b)(2). The appellees assert in their brief that this provision permits the Trustee "to direct the actions of the Board in fulfilling its statutory duties," and that these duties include "determining whether and how to revoke one's parole." According to the appellees, "[p]romulgating guidelines relating to the manner in which parole violator warrants are issued is clearly within the scope of the Trustee's authority."

The appellees invoke the "plain language" doctrine, but in this case, in our view, the statutory language is not so plain, and the appellees' interpretation of it is unpersuasive. The appellees point out, quite correctly, that the statute contains no provision limiting the Trustee's authority to direct the actions of the BOP, and they maintain that his authority is therefore unrestricted. But if this position is carried to its logical conclusion, then the Trustee would be authorized to direct the Board to take any action whatsoever, whether or not that action was consistent with the existing statutory and regulatory scheme.

 Such a construction of a single-sentence grant of authority is dubious to say the least. "The cardinal principle of statutory construction is to save and not to destroy." *NLRB v. Jones & Laughlin Steel Corp.,* 301 U.S. 1, 30, 57 S.Ct. 615, 81 L.Ed. 893 (1937). Repeals by implication are not favored, and we will not deem

existing law to have been implicitly repealed unless the intention of the legislature is "clear and manifest." *United States Parole Comm'n v. Noble*, 693 A.2d 1084, 1087 (D.C.1997) (citation omitted), *aff'd, opinion adopted*, 711 A.2d 85 (D.C. 1998) (en banc) (adopting division opinion). The Revitalization Act therefore should not be read as permitting the invalidation of District of Columbia law by an administrative official unless no reasonable alternative construction exists. *Cf. City of Yonkers v. United States*, 320 U.S. 685, 690, 64 S.Ct. 327, 88 L.Ed. 400 (1944) (where a federal agency claims authority to act in a domain ordinarily reserved to state or local authorities, "the justification of the exercise of the federal power must clearly appear"). In light of these authorities, we conclude that the Revitalization Act does not authorize the Trustee to order the Board to violate existing law. That, in our view, is the most reasonable interpretation of the words that Congress has written.

■■■ But if the Trustee may not order the Board to act in contravention of the law, then Directive No. 001 cannot be sustained. "[An agency] is bound by its own validly promulgated regulations." *Abdullah v. Roach*, 668 A.2d 801, 805 (D.C. 1995) (citations omitted). "A regulation has the force and effect of law, much like a statute." *Hutchinson v. District of Columbia*, 710 A.2d 227, 234 (D.C.1998) (citation omitted). Indeed, it has long been "a well accepted principle that rules of practice, pleading, procedure and evidence promulgated by an administrative agency un-

der proper legal authorization have the force and effect of law." *Mallory Coal Co. v. National Bituminous Coal Comm'n*, 69 App. D.C. 166, 173, 99 F.2d 399, 406 (1938) (footnote omitted). Regulations may, of course, be repealed or amended, and new rules and regulations may be adopted, but such changes must be effected in conformity with prescribed statutory procedures. *See, e.g.*, the District of Columbia Administrative Procedure Act (DCAPA), D.C.Code §§ 1–1501 *et seq.* (1999); *Webb v. District of Columbia Dep't of Human Servs.*, 618 A.2d 148, 151 (D.C.1992) (per curiam).[8] The BOP's parole regulations having been duly promulgated, they are the law, and the Board must follow them unless and until they have been rescinded or amended in the manner prescribed by law. The Revitalization Act cannot fairly be read as having effected a *pro tanto* implied repeal of the DCAPA.

■■■ The regulations, as we have noted, require the exercise of discretion by the Board in relation to the issuance of parole violator warrants against the three appellants. Directive No. 001, on the other hand, requires the Board to issue a warrant automatically upon a judicial finding of probable cause, and prohibits the exercise of discretion in that regard. The Trustee has thus ordered the Board to engage in conduct contrary to its regulations, and therefore contrary to law. In doing so, he has exceeded the authority conferred upon him by the Revitalization Act.

Our conclusion in this regard is bolstered by the statutory scheme as a whole.

**8.** Contrary to the position taken by the appellees, Directive No. 001 is not an internal agency practice and procedure "primarily directed toward improving the efficient and effective operations of an agency, not toward a determination of the rights or interests o[r] affected parties." *Batterton v. Marshall*, 208 U.S.App. D.C. 321, 329 n. 34, 648 F.2d 694, 702 n. 34 (1980). Rather, the Directive determines the circumstances under which a parolee may be deprived of his liberty. It is a statement "of general or particular applicability and future effect designed to implement, interpret or prescribe law or policy or to

describe the ... procedure or practice requirements of the [BOP]," D.C.Code § 1–1502(6); *see also Webb, supra,* 618 A.2d at 151, and is therefore subject to the requirements of the DCAPA.

Moreover, D.C.Code § 24.201.3 provides that "the Mayor shall promulgate proposed rules to implement the provisions of §§ 24–201.1 to 24–201.3." These provisions deal with the BOP's authority to revoke parole, and thus logically embrace the issuance of parole violator warrants as a step in the revocation process.

The Revitalization Act provides that the District of Columbia Board of Parole will ultimately be abolished, and that its authority is to be transferred to the United States Parole Commission (USPC). *See* D.C.Code § 24–1231. The office of the Trustee is a temporary one; the position will continue to exist only until the District of Columbia Offender Supervisor, Defender and Courts Services Agency has been established pursuant to § 24–1233.

The Revitalization Act further provides that after the USPC assumes the BOP's duties, the USPC shall, with exceptions not here relevant, "exercise the authority vested in it by this section *pursuant to the parole laws and regulations of the District of Columbia.*" D.C.Code § 24–1231(c) (emphasis added). As the appellants point out in their brief, "[i]t is implausible [that] Congress could have intended to allow the Trustee—a transitional official—to exercise greater power over [District of Columbia] parole regulations than the agency responsible in the long term—the [United States] Parole Commission."

 The appellees emphasize the public safety considerations that led to the issuance of Directive No. 001. We recognize the importance of these concerns. This court, however, has the obligation to invalidate even a constructive and sensible measure if the issuing official has exceeded his authority by promulgating it. That is what happened in this case. If the procedures in Directive No. 001 are deemed to be in the best interests of justice, the statute or the regulations may be amended accordingly.[9]

9. Contrary to the position taken by the appellants, the comparatively modest due process requirements enunciated in *Morrissey v. Brewer*, 408 U.S. 471, 479–85, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), should not present a serious obstacle to the legislative adoption of the Directive's procedures or to an appropriate revision of the Board's regulations.

10. At the time the appellants filed their habeas corpus petitions, their parole had not yet been revoked.

## V.

We turn to the question of relief. The appellants ask this court to declare that the Board abused its discretion by issuing the disputed parole violator warrants. We have effectively granted this relief in the preceding sections of this opinion.

 Teachey and Ellison both assert that the erroneous issuance of the warrants irreparably tainted the subsequent revocation of their parole. They ask that the orders of revocation be set aside and that the good time that they have forfeited, *see Noble, supra,* be restored. These claims are altogether without merit.

It does not appear from the record that either Teachey or Ellison has sought relief in the trial court from the revocation of his parole.[10] The focus of the litigation has been, and remains, the validity *vel non* of the appellants' pre-revocation detention on the basis of parole violator warrants issued pursuant to Directive No. 001. But even assuming, *arguendo*, that a challenge to the revocation orders is properly before us, the appropriate remedy for an erroneous order of detention is the reversal of that order, and the defendant is not entitled to the dismissal of the underlying charge. *See, e.g., Mack v. United States*, 637 A.2d 430, 432 (D.C.1994).[11] Teachey has entered a plea of guilty to a serious felony—aggravated assault while armed—which he committed in violation of his parole. He is in no position to claim that the order of revocation should be set aside or that he should be treated as though he had complied with the conditions of his parole.[12]

11. "[T]he proper remedy for noncompliance with the protections included in the statutory scheme [for preventive detention] is to reconsider the defendant's detention without bond, not to terminate the prosecution." *Mack, supra,* 637 A.2d at 432.

12. Teachey's related claim—that he is entitled to immediate release—is legally frivolous, albeit not altogether lacking in chutzpah. One who committed a felony while on parole for another dangerous crime—in Teachey's case, attempted distribution of PCP—has no right to be at liberty.

Finally, Teachey and Ellison have requested this court to order the expungement of all records pertaining to the revocation of their parole. If we were to grant this extraordinary relief, the appellants would be able to assert, without contradiction in the record, that they did not violate the terms of their parole, when in fact they did. Moreover, their request for expungement is not based on any claimed defect in the revocation proceedings themselves, but solely on an irregularity in their pre-revocation detention.

Expungement is a drastic remedy. It effectively rewrites history. In some measure, expungement conceals the truth and creates a misleading record, for events which actually happened are made to appear not to have happened at all. Such relief has been authorized under narrow circumstances where injustice would otherwise result. *See, e.g.,* Super. Ct.Crim. R. 118(a) (court may order arrest records sealed "[f]or good cause shown and to prevent manifest injustice"); *cf. Latimore v. United States,* 597 A.2d 362, 364–65 (D.C. 1991) (expungement of criminal records of youthful offenders pursuant to District of Columbia Youth Rehabilitation Act, D.C.Code §§ 24–801 *et seq.* (1996)). Teachey and Ellison have cited no authority, and we know of none, which would support such a remedy in this case.

## VI.

For the foregoing reasons, the orders appealed from are reversed. Having concluded that the Board abused its discretion in issuing the parole violator warrants, we would ordinarily remand the case to the Board with directions to exercise its discretion in conformity with its regulations. In light of developments since the warrants were issued, however, there is no longer any occasion for such a remand. The appellants' requests for additional relief, beyond a declaration that the Board

abused its discretion by issuing the warrants, are denied.

*So ordered.*

Ellison was reparoled immediately after his parole was revoked, and he therefore has no occasion to emulate Teachey and request that he be released. Like Teachey, however, Elli-son was found to have violated his parole, and he has no valid claim for restoration of good time credits.