**In re ESTATE OF Louise GREEN,**

**Old Republic Surety Company, Appellant.**

**No. 01–PR–1247.**

District of Columbia Court of Appeals.

Argued Jan. 9, 2003.

Decided Jan. 30, 2003.

Andrew J. Terrell, Washington, DC, for appellant.

Anne Meister, pro se, for appellee.

Before SCHWELB, REID and WASHINGTON, Associate Judges.

REID, Associate Judge:

Appellant Old Republic Surety Company ("Old Republic"), surety for the original personal representative of the estate of Louise Green, seeks reversal of a trial court order requiring it to pay the fees of a special master, appointed by the Probate Division of the trial court at the request of the successor personal representative of

---

Ms. Green's estate, after the original personal representative was removed by the court. Old Republic maintains that the trial court erred by not ruling that the special master's claim was barred by the statute of limitations. We hold, as a general rule, that a claim on a personal representative's bond accrues when the final account of the estate is filed and approved by the Probate Division of the trial court; and finding no error in this case, we affirm the judgment of the trial court.

## FACTUAL SUMMARY

The record before us shows that Louise Green died on August 24, 1990, leaving a son, David Avery, whom she raised, and a daughter, Lanita Avery Madison, who was raised by the daughter's father. Mr. Avery was appointed personal representative of his mother's estate on December 24, 1990. He filed his first accounting on September 1, 1992, and his second accounting on May 21, 1993. Approximately three weeks after the second accounting was filed, Ms. Madison lodged a complaint in the trial court seeking to remove Mr. Avery as personal representative. She asserted that Mr. Avery had failed to arrange for sale of the estate's main asset, a house located as 1324 Michigan Avenue, in the Northeast quadrant of the District of Columbia; that he refused to close the estate, had moved to Maryland, and had rented the Michigan Avenue property.

Subsequently, Mr. Avery and Ms. Madison settled their differences. On October 26, 1993, Mr. Avery agreed to pay his sister $68,000 for her share of the Michigan Avenue property, and to divide funds in the estate account equally between brother and sister. The trial court entered a consent order on January 18, 1994, granting authority to Mr. Avery to sell the Michigan Avenue property without an additional undertaking, and specifying that

Ms. Madison's complaint against Mr. Avery would be dismissed following sale of the property and disbursement of the assets of the estate.

Approximately one year later, the trial court removed Mr. Avery as personal representative of his mother's estate for failure to file the third account. The February 9, 1995 order removing Mr. Avery appointed Jerry Hunter as successor personal representative on condition that "he file an undertaking with surety approved by the Court in the sum of $17,000," and further ordered that:

> [T]he undertaking given by [Mr. Avery] shall remain in full force and effect until such time as the total assets of the estate have been turned over to a duly appointed successor fiduciary and receipt filed therefor, and the surety upon said undertaking shall stand discharged from all liability under said undertaking except for prior defaults, if any. . . .

No further action on the estate is reflected in the record until October 2000 when Mr. Hunter requested the "appointment of a special master to state an account for the administration of the removed personal representative." Anne Meister, Esq. was appointed on November 17, 2000, as "special master of the estate of Louise Green for the purpose of stating an account for the administration of the removed personal representative. . . ." Ms. Meister filed her report on February 15, 2001, concluding that Mr. Avery "clearly failed to perform the duties of his office in proper fashion [because] [n]either the [f]irst nor the [s]econd [a]ccount was approved by the Court, and [Mr. Avery] failed to file the [t]hird or [f]ourth [a]ccount." The special master also determined that: "All of the assets of the estate have been distributed by either [Mr. Avery] or [Mr. Hunter]."

Simultaneously with her report, the special master petitioned for compensation and sought payment from Old Republic's bond. Old Republic denied liability on the bond on the ground that the claim was barred under the applicable District of Columbia five-year statute of limitations.

On August 27, 2001, the trial court ruled that the statute of limitations did not bar the special master's claim because said claim did not accrue until the court's approval of the special master's report, since only "at that point is ... the cause of action against the removed personal representative and the surety ... fully known." Moreover, the trial judge concluded that the order removing Mr. Avery was the "law of the case" and that order extended the period of claims against the bond provided by Old Republic until "the final settlement between the successor personal representative and Mr. Avery's attorney,[1] or approval of the special master's report." The trial court confirmed and approved the special master's report and entered judgment in her favor in the amount of $3,197.48, based upon Ms. Meister's statement of services rendered and expenses, dated August 17, 2001. Old Republic filed a timely appeal.

## ANALYSIS

■ Old Republic contends that under D.C.Code § 12–301(6) (1995),[2] which allows five years for filing a claim "on an executor's or administrator's bond," the time "beg[an] to [run] when [Mr. Avery] [was] removed from his position." Opposing an accrual rule based on the filing and approval of the final account of an estate, Old Republic asserts that: "The [s]uccessor [p]ersonal [r]epresentative could have taken 20 years to investigate the case and the statute of limitations would still not have accrued. If the trial court's decision is allowed to stand, [D.C.] Code § 12–301(6) is rendered virtually meaningless."

The special master maintains that the statute of limitations did not begin to run "until the approval of the report of the [s]pecial [m]aster on August 27, 2001." Further, she asserts that "an injured person could not have brought an action on the personal representative bond until the actual misdeeds of the personal representative, if any, were established by the court." In addition, she points to D.C.Code § 28–504 (1996) which provides, in pertinent part, that "[a fiduciary's] bond shall continue in force as against both principal and sureties until the funds or estate are fully accounted for and paid over or delivered to the parties interested herein, or their attorneys, other than himself."

■ Since the issue presented in this case involves the interpretation of D.C.Code § 12–301(6), our review is *de novo.* See *Porter v. United States,* 769 A.2d 143, 148 (D.C.2001) (citing *District of Columbia v. Jerry M.,* 717 A.2d 866, 868 (D.C.1998)). As we said in *Farris v. Compton,* 652 A.2d 49 (D.C.1994):

A civil action "may not be brought after expiration of [the period specified in the

---

1. Mr. Avery's attorney died before all matters governing the estate had been resolved or clarified. Given our conclusion regarding the statute of limitations, it is unnecessary to address the trial court's "law of the case" ground for its judgment.

2. D.C.Code § 12–301(6) provides in pertinent part:

Except as otherwise specifically provided by law, actions for the following purposes may not be brought after the expiration of the period specified below from the time the right to maintain the action accrues:

. . . .

(6) on an executor's or administrator's bond—5 years . . . .

statute] from the time the right to maintain the action accrues." D.C.Code § 12–301 (1989). The statute does not define "accrues," and the task of identifying the moment of accrual has been left to the courts. *Ehrenhaft v. Malcolm Price, Inc.*, 483 A.2d 1192, 1198 (D.C.1984).

*Id.* at 53 (footnote omitted). Under our case law, accrual is determined "on a case-by-case basis." *Id.* at 62 (quoting *Ehrenhaft, supra,* 483 A.2d at 1204). Moreover, "[a]s a general rule, an action accrues and the statute of limitations begins to run when the suit could first be initiated." *Kerns v. Ameriprint, Inc.*, 621 A.2d 381, 383 (D.C.1993) (citing *Toomey v. Cammack*, 345 A.2d 453, 455 (D.C.1975)).

We are confronted with an issue of first impression in this jurisdiction that was raised but not decided in *In re Estate of Spinner,* 717 A.2d 362 (D.C.1998), because it was not broached in the Probate Division of the trial court. That issue is squarely presented here, and we must now decide when the statute of limitations starts to run on an action against a surety who has provided a bond for the personal representative of an estate.

Jurisdictions which have addressed this issue differ as to when a claim accrues on a personal representative's bond in an estate case. *See* W.J. Dunn, Annotation, *When Statute of Limitations Begins to Run Against Action on Bond of Personal Representative,* 44 A.L.R.2d 807 (1955). Most jurisdictions have concluded that the claim accrues either when: (1) the final order (*e.g.* a distribution order or an order approving the final accounting for the estate or an order of judgment on behalf of a creditor) determining the personal representative's liability has been entered by the court, *see Toombs v. Daniels,* 361 N.W.2d 801 (Minn.1985); *Sherwood v. Merchants Mut. Bonding Co.,* 193 Neb. 262, 226 N.W.2d 761 (1975); *Spencer v. Hamilton,* 156 Okla. 194, 13 P.2d 81 (1932); *Gronna v. Goldammer,* 26 N.D. 122, 143 N.W. 394 (1913); or (2) the personal representative has been removed or has died, or a successor personal representative has been appointed by the court, *see In re Estate of Ellen Lee,* 193 Mich.App. 586, 484 N.W.2d 411 (1992); *Duckett v. Pettee,* 50 N.C.App. 119, 273 S.E.2d 317 (1980).[3] The special master urges us to adopt the first approach, and Old Republic the second.

Because the governing limitations statute, D.C.Code § 12–301(6) does not define the word "accrue" and since we have said that the meaning of the word must be determined on a case-by-case basis, *Farris, supra,* 652 A.2d at 62 (quoting *Ehrenhaft, supra,* 483 A.2d at 1204), our decision concerning when the special master's claim in this case accrued on the removed personal representative's bond requires an interpretation of our probate statute and implementing rules, as well as the statute governing a fiduciary's bond. We previously have set forth the legal principles that guide statutory interpretation in this jurisdiction. We summarized some of the fundamental principles in *District of Columbia v. Brown,* 739 A.2d 832 (D.C.1999):

> "In interpreting a statute, we are mindful of the maxim that we must look first to its language; if the words are clear and unambiguous, we must give effect to its plain meaning." *McPherson v. United States,* 692 A.2d 1342, 1344 (D.C. 1997) (quoting *J. Parreco & Son v. Rental Hous. Comm'n,* 567 A.2d 43, 45 (D.C.

---

3. For other approaches as to when a claim accrues on the bond of a personal representative, *see* Dunn, Annotation, *supra.*

1989) (citation omitted)); *see also* 2A SUTHERLAND STATUTES AND STATUTORY CONSTRUCTION § 46.04, at 98 (5th ed.1992). As we reiterated in *Citizens Ass'n of Georgetown v. Zoning Comm'n of the District of Columbia*, 392 A.2d 1027 (D.C.1978): "In construing a statute the primary rule is to ascertain and give effect to legislative intent and to give legislative words their natural meaning." *Id.* at 1032 (quoting *Rosenberg v. United States*, 297 A.2d 763, 765 (D.C.1972) (citation omitted)). Moreover, "if divers statutes relate to the same thing, they ought all to be taken into consideration in construing any one of them...." *Luck v. District of Columbia*, 617 A.2d 509, 514 (D.C.1992) (quoting *United States v. Freeman*, 44 U.S. (3 How.) 556, 564–66, 11 L.Ed. 724 (1845) (other citations omitted)). "If statutes conflict, our task is to reconcile them if possible." *Harman v. United States*, 718 A.2d 114, 117 (D.C.1998); *see also Gonzalez v. United States*, 498 A.2d 1172, 1174 (D.C.1985) ("We have a duty to make every effort to reconcile allegedly conflicting statutes and to give effect to the language and intent of both.") (quoting *District of Columbia v. Smith*, 329 A.2d 128, 130 (D.C.1974)).

*Id.* at 840.

We look first to our probate statute and implementing regulations which contain provisions relevant to our analysis. D.C.Code § 20–701(a) (2001) specifies, in pertinent part:

> A personal representative ... is a fiduciary who ... is under a general duty to settle and distribute the estate of the decedent in accordance with the terms of the will ... as expeditiously and efficiently as is prudent....

At the time Mr. Avery served as personal representative of Ms. Green's estate, D.C.Code §§ 20–721, –724 (1989) required a personal representative to file accounts of the estate, including an initial account and subsequent accounts, at specified time periods; and § 20–725 authorized the removal of a personal representative "upon failure to file an account....," unless in accordance with § 20–731, "each heir or legatee sign[ed] a written waiver filed with the Register [of Wills]." [4] No such waiver was filed in the estate of Ms. Green.

Section 20–526 mandated the removal of a personal representative for "fail[ure], without reasonable excuse, to perform any material duty of such office ....," and provided for the appointment of a successor personal representative. In addition, § 20–526(d) made it clear that removal did not relieve a personal representative of the duty to file an account: "A personal representative who has been removed from office shall immediately account for and deliver the property belonging to the estate to the successor personal representative or special administrator." Furthermore, § 20–1301 provided, in part, that "[t]he approval of the final account [of an estate] shall automatically close the estate, and if the final account so requests and the Court approves, shall terminate the appointment of the personal representative." Implementing regulations, in part, required a personal representative to file a bond, SCR–PD 104 (1995) (Superior Court Rules of the Probate Division) (*see also* D.C.Code § 20–502); to file accounts, SCR–PD 114; and provided for the removal of a personal representative who defaulted on his duties:

> Whenever it comes to the attention of the Register of Wills that there is an

---

**4.** These provisions are identical in the current probate code, except that they apply only to "supervised administration" of an estate.

apparent irregularity or default in the administration of a proceeding under these Rules, including but not limited to the failure to file within a prescribed time a proper inventory or account, or that there is an insufficiency in the amount or security of an undertaking, the Register of Wills shall immediately notify the personal representative, special administrator or guardian (hereinafter "person") that unless the irregularity or default is corrected forthwith, the person so notified shall be subject to removal. If the irregularity is not remedied, the Register of Wills shall report said irregularity to the Court. Following such notification, the Court shall set a summary hearing, direct notice of the hearing to the person who has not remedied the irregularity and, at the hearing, remove the person and appoint a successor, unless for good cause shown, failure to correct the irregularity or default is deemed excusable.

SCR–PD 121.

In addition to our probate code and implementing regulations, there is one other pertinent statutory provision that must be examined before we can resolve the question as to when a claim accrues on the bond of a personal representative. D.C.Code § 28–2504 (1991), recodified at D.C.Code § 28–2504 (2001), concerns a fiduciary's bond and provides:

A person appointed by order or decree of the court to a fiduciary office may not discharge his bond for the due performance of his duties, by receipts, releases, or acquittances from himself, as attorney for parties interested, to himself as fiduciary; but the funds or estate for the application whereof he is responsible shall be considered as remaining in his hands, and the bond shall continue in force as against both principal and sureties until the funds or estate are fully accounted for and paid over or delivered to the parties interested therein, or their attorney, other than himself.

Applying the principles of statutory construction, we conclude that nothing in the language of the probate and bond provisions set forth above squarely answers the question, when does a claim accrue on a personal representative's bond. Nor does the legislative history of the probate code provide an answer.[5] Moreover, we have been unable to find any legislative history pertaining to the fiduciary's bond provision, D.C.Code § 28–2504.[6] Therefore, we are left to consider the language and relationship of certain sections of the probate code and regulations, and the fiduciary's bond requirement, together with the limited case law that is available.

The language of § 28–2504 is compelling and clear. The fiduciary's "bond shall continue in force as against both principal and sureties until the funds or estate are fully accounted for and paid over or delivered to the parties interested therein or their attorney, other than himself." In light of this clear language, and the absence of any exception based upon the removal of a personal representative and the appointment of a successor personal representa-

---

5. COMMITTEE ON THE JUDICIARY OF THE COUNCIL OF THE DISTRICT OF COLUMBIA, Report on Bill 3–91, the District of Columbia Probate Reform Act of 1980, March 12, 1980; Bill 3–91 became D.C. Law 3–72, effective June 24, 1980, 27 D.C. Reg. 2155. While the committee report contains a discussion of provisions concerning claims against a decedent's estate, see §§ 20–901 through 20–914, there is no men-

tion of claims against the bond of a personal representative.

6. Section 28–2504 was enacted by the Congress of the United States as part of the District of Columbia—Uniform Commercial Code; see Pub.L. 88–509, 78 Stat. 667, August 30, 1964.

tive, we conclude that the bond given to Mr. Avery by Old Republic remained in place until the final statement of account was filed by the special master on February 15, 2001, and approved by the Probate Division on August 27, 2001. Therefore, we hold that the special master's claim on the removed personal representative's bond accrued when the final account was filed by the special master and approved by the Probate Division of the trial court. No section of the probate code or implementing rules is inconsistent with this conclusion. Indeed, D.C.Code § 20–526(d) imposes on the removed personal representative a continuing duty to "account for ... the property belonging to the estate," and § 20–1301, which identifies the final account as the trigger to close an estate, includes no exception in the case of an estate administered initially by a subsequently removed personal representative.

Our conclusion that a claim on the bond of a personal representative accrues when the final account is filed and approved by the probate division is consistent with that of jurisdictions in some twenty states which have considered the question presented in this matter. Cases in those jurisdictions stress not only the need for a finally approved account before claims against a surety bond can be determined, see W.J. Dunn, Annotation, *supra*, 44 A.L.R.2d 807 at § 2, but also "the duty of the [fiduciary] to make a satisfactory accounting ....," *Gronna*, *supra*, 143 N.W. at 398. If we fixed the date of accrual at the point the personal representative is removed and the successor representative is appointed, as Old Republic argues, the liability, if any, of the removed personal representative would not be known. We fully appreciate Old Republic's concern about delays in making claims on a surety's bond, and recognize that a timely claim may be dismissed if the record indicates, as the record in this case does not, an inordinate and unreasonable delay in the filing of a claim against the bond of a personal representative, see *Spencer*, *supra*, 13 P.2d at 82; *Howard v. Jeffrey*, 268 P.2d 897, 899 (Okla.1953), which caused prejudice to the surety, or there is " 'such lapse of time that it may be reasonably supposed that such prejudice will occur....,' " *Gronna*, *supra*, 143 N.W. at 398 (quoting *Cahill v. Superior Ct.*, 145 Cal. 42, 78 P. 467, 469 (1904) (other citation omitted)); see also *Street v. Henry*, 124 Ala. 153, 27 So. 411, 413–14 (1899) (claim against surety in an estate case that related to transactions taking place some thirty years earlier and after the death of key parties dismissed despite being filed within the period of limitation).[7] In short, the special master's claim for compensation was timely, and the record in the case before us is devoid of any evidence of prejudice to Old Republic, or unreasonable delay on the part of the special master in filing the final account for the administration of the removed personal representative and request for compensation.[8]

---

7. A surety, concerned that liability remains open because the statute of limitations has not begun to run, can urge the personal representative to file the "full[ ] account[ing]" required by § 28–2504, seek approval of it by the Probate Division, request that the estate be closed, have any potential liability established, and thereby ensure that the clock begins to run on the statutory limitations period. In this case, however, no such full accounting was filed.

8. The special master filed her report within three months of her appointment. The record on appeal provides no explanation as to why the successor personal representative who was appointed on February 9, 1995, did not request the "appointment of a special master to state an account for the administration of the removed personal representative [Mr. Avery]" until October 2000. We take no position on whether the special master could have filed a claim against the bond of the successor

Accordingly, for the foregoing reasons, we affirm the judgment of the trial court.

personal representative for his delay in seek-    ing the appointment of a special master.