**In re Adline UWAZIH, Appellant.**

**No. 00–PR–1351.**

District of Columbia Court of Appeals.

Argued Feb. 19, 2003.
Decided May 8, 2003.

John O. Iweanoge, Jr., Washington, DC, for appellant.

Kenneth Rosenau for appellee, Washington Hospital Center.

Before RUIZ, REID and WASHINGTON, Associate Judges.

REID, Associate Judge:

Appellant Adline Uwazih appeals from the trial court's dismissal of her petition for appointment of a guardian and a conservator. Ms. Uwazih contends that the trial court erred in dismissing her petition on the ground that she was not a domiciliary of the District of Columbia. We reverse the judgment of the trial court in part and remand this matter for further proceedings consistent with this opinion. We hold that the guardianship provisions

of the District of Columbia Guardianship, Protective Proceedings, and Durable Power of Attorney Act, D.C.Code § 21–2001 *et seq.* (2001) confer jurisdiction on the Superior Court if the incapacitated person for whom guardianship is sought, even if not a domiciliary, is physically present in the District of Columbia. Furthermore, we conclude that the trial court did not abuse its discretion in declining to appoint a conservator for Ms. Uwazih since the record reveals that she neither owned nor had control over any property located in the District.

## FACTUAL SUMMARY

Ms. Uwazih, a citizen of Nigeria who earlier had been admitted to the United States as a result of an immigration lottery, was crossing Jefferson Davis Highway in Dumfries, Virginia in September 1999, when she was struck by an automobile and severely injured. She was transported by air to the Washington Hospital Center in the District of Columbia where she was treated for a brain injury and other serious internal injuries. By March 2000, the Washington Hospital Center was ready to discharge Ms. Uwazih. On March 10, 2000, the hospital sent a letter to her husband, who was still residing in Nigeria. The letter stated in part:

> [Ms. Uwazih] has been receiving occupational and physical therapy 6 days a week which has given her improved cognition, and allowed her to assist in her own activities of daily living and func-

tional mobility. [She] is now able to feed herself with assistance and perform activities of daily living with assistance. Due to her head injury, [she] has near total left sided paralysis. She will forever be confined to a wheelchair and will require assistance moving from her bed to the wheelchair, and in moving about the house in her chair.

On May 1, 2000, counsel for Ms. Uwazih filed a petition for a general proceeding in which he sought the appointment of a guardian and a conservator for her due to her "partial brain damage and paralysis." The guardian would assist with decisions regarding the place to which Ms. Uwazih would be discharged.[1] The Washington Hospital Center filed an emergency motion to dismiss Ms. Uwazih's petition for lack of jurisdiction, asserting that she was not domiciled in the District but was a resident of Virginia and had no property in the District. The hospital added that the delay caused by the petition would prevent the release of Ms. Uwazih and her return to Nigeria since her travel documents to Nigeria would be good only through May 27, 2000.

The trial court held a hearing on Ms. Uwazih's petition on May 9, 2000. The central focus of the hearing, resulting in the dismissal of the petition, was the domicile of Ms. Uwazih and whether her attorney had manufactured diversity to enable her negligence lawsuit in Virginia to be filed in the federal court.[2] On June 5,

---

1. The cousin of Ms. Uwazih's husband, with whom she had been residing in Virginia, declined to permit her to return to his home because no one would be available during the day to care for her. The Washington Hospital Center had offered $20,000 for Ms. Uwazih's care, and had been working with the Nigerian embassy to arrange for her return to Nigeria, but her husband was concerned about the availability of adequate treatment there.

Consequently, the possibility of a placement in a Maryland facility was being explored.

2. In her dismissal order the trial court stated in part:

> The lawyer who filed this case acted in an improper fashion to manufacture jurisdiction. He openly admits that he used his own address to make it appear that the

2000, the trial court issued a written order dismissing the petition for lack of jurisdiction, stating in part:

First, for Constitutional reasons, this Court cannot exercise its authority to impose any fiduciary upon anyone unless and until the person who is the Subject is proved to be a domiciliary of the District or a person who holds property inside the District. Neither set of facts has been established. This is not a close question.

The Subject is not in any way a domiciliary of the District of Columbia....

It is clear that the Subject's presence in the District of Columbia is pure happenstance....

The trial court also asserted: "[I]t does not appear that there is a need for a court-appointed fiduciary at all.... There is no need for court intervention if community resources can be applied to insure the personal welfare of an incapacitated person." [3] The trial court expressed the view that even if funds were contributed, they

"would not be used personally by the Subject, but only would be channeled directly to a care provider." Ms. Uwazih filed a timely appeal.

## ANALYSIS

Ms. Uwazih's counsel primarily argues that the trial court had jurisdiction over her because she is "an incapacitated individual in the District of Columbia"; and that domicile in the District of Columbia is not required by the applicable statute with respect to the appointment of a guardian. Aside from asserting that counsel for Ms. Uwazih attempted to manufacture jurisdiction to obtain diversity of citizenship for purposes of the Virginia personal injury lawsuit, the Washington Hospital Center contends that domicile in the District of Columbia is a prerequisite for the appointment of a guardian, even though the incapacitated person is present in the District. Furthermore, the hospital contends that the guardianship statute is restricted to the "appointment of medical guardians ad litems and guardians of the person in situ-

---

Subject has her own address in the District of Columbia. This is a misleading tactic. Based upon our review of the record and transcript of the hearing, we see nothing to support the trial court's conclusions about counsel. Since Ms. Uwazih was still a citizen of Nigeria, there was no need to manufacture a domicile for the purpose of diversity jurisdiction. *See Radlo v. Rhone–Poulenc, S.A.,* 241 F.Supp.2d 61, 63 (D.Mass.2002) ("A federal district court has jurisdiction over a case raising only state law claims if the plaintiffs and defendants are citizens of different states (or foreign countries)..." (citing 28 U.S.C. § 1332(a)). Moreover, most of the pleadings in the record that were filed by counsel for Ms. Uwazih correctly state her address as the Washington Hospital Center where she had been confined since her September 1999 automobile accident. The personal injury complaint filed in Virginia listed Ms. Uwazih's address as "C/O 1010 Vermont Avenue, N.W., Suite 600, Washington, D.C. 20005," the address of her legal counsel. The complaint itself in paragraph 4 states: "The Plaintiff

[Ms. Uwazih] is a resident/patient at Washington Hospital Center, Washington, D.C." Since the husband's cousin, with whom Ms. Uwazih had been residing prior to her accident, had made it clear that she could not return to that home, counsel for Ms. Uwazih understandably used the Washington Hospital Center's address, and in the case of the complaint, indicated a "care of" address at his law office in the caption, but in the body of the complaint made it clear that she was at the Washington Hospital Center.

3. The trial court also declared:

The Petitioner has not shown ... that no religious organization or other private entity will serve as a mere collection and disbursement agent. Many options can be explored. Resolving this question may take more time than whatever time has been invested in this subject. However, this kind of an issue is entirely too simple to warrant a baseless use of jurisdiction of the Superior Court.

ations where conflict exists on treatment, or no adult family member, or power of attorney exists to allow treatment."

■ The decision to appoint a guardian or a conservator "is committed to the [trial] court's 'considerable discretion' and we review it on appeal only for abuse of that discretion." *In re Orshansky*, 804 A.2d 1077, 1092 (D.C.2002) (quoting *In re Langon*, 663 A.2d 1248, 1250 (D.C.1995)). However, "[a]n exercise of discretion must be founded upon correct legal standards." *Teachey v. Carver*, 736 A.2d 998, 1004 (D.C.1999) (citing *In re J.D.C.*, 594 A.2d 70, 75 (D.C.1991)). Whether the trial court abused its discretion in declining to appoint a guardian or conservator for Ms. Uwazih depends upon an interpretation of the trial court's jurisdiction under the District of Columbia Guardianship, Protective Proceedings, and Durable Power of Attorney Act of 1986, D.C.Code § 21–2001 *et seq.* (2001) ("the Guardianship Act"). That is a legal issue we review *de novo*. *See In re Estate of Louise Green*, 816 A.2d 14, 16 (D.C.2003) (citations omitted).

The Guardianship Act contains different provisions for the appointment of a guardian, and that of a conservator. Under § 21–2041(a) of the Guardianship Act, "[a]n incapacitated individual or any person interested in the welfare of the incapacitated individual may petition for appointment of a guardian, either limited or general." In addition, § 21–2051(a) and (b) authorize the trial court, in response to a petition, to appoint a conservator for an individual, "if the court determines that . . . the individual is an incapacitated individual according to section 21–2011(11) . . . ." D.C.Code § 21–2051(b). An "incapacitated individual" is defined as:

> An adult whose ability to receive and evaluate information effectively or to communicate decisions is impaired to such an extent that he or she lacks the capacity to manage all or some of his or her financial resources or to meet all or some essential requirements for his or her physical health, safety, habilitation, or therapeutic needs without court-ordered assistance or the appointment of a guardian or conservator.

D.C.Code § 20–2011(11). Generally, "a guardian of an incapacitated individual is responsible for care, custody and control of the [individual]. . . ." D.C.Code § 21–2047. And, a conservator "manage[s] the estate of a protected individual. . . ." D.C.Code § 21–2011(3). More specifically,

> The appointment of a conservator vests in the conservator title as trustee to all property of the protected individual presently held or after acquired, or to the part of the property specified in the order, including title to any property held for the protected individual by custodians or attorneys-in-fact.

D.C.Code § 21–2066(a).

■ Based upon our reading of the Guardianship Act and its legislative history, we conclude that there is no requirement that an incapacitated person be domiciled in the District of Columbia before a guardian may be appointed. To be covered under the Act, an incapacitated individual need only be physically present in the District. D.C.Code § 21–2021(4). Where the words of the statute are unambiguous, we apply their plain meaning. *See Green, supra*, 816 A.2d at 17–18 (citation omitted).

■ The definition of an "incapacitated individual," which appears in § 21–2011(11) is not phrased in terms of a person domiciled in the District. Section 21–2021 does contain the words "domiciled" and "domiciliary," but not in the subsection pertaining to "an incapacitated individual"; indeed, that subsection, in contrast to the first two subsections, states

simply: "An incapacitated individual in the District."[4] Applying the statutory interpretation canon, *expressio unius est exclusio alterius,*[5] we conclude that since the first two subsections reference "domicile," the absence of the word "domicile" from the fourth subsection, relating to an incapacitated person, is significant in terms of the internal context of § 21–2021.

While the first subsection of § 21–2021 includes "an individual to be protected who is domiciled in the District," a "protected individual" has special meaning under the Guardianship Act. Section 21–2011(22) defines a "protected individual" as "an individual for whom a conservator has been appointed or other protective order has been made as provided in sections 21–2055 and 21–2056." Sections 21–2055 and 21–2056 appear in the subchapter of the Guardianship Act which is devoted to conservators and the protection of property, rather than in the subchapter concerning guardians of incapacitated individuals.

In sum, our review of pertinent sections of the Guardianship Act reveals no indication that an incapacitated individual, as defined by the Act, must be domiciled in the District before a guardian may be appointed by the trial court. Nor have we found anything in the legislative history, specifically the District's legislature's Committee Report pertaining to the Act, which states, or even suggests, that domicile in the District is a requirement for the appointment of a guardian for an incapacitated individual. *See* COUNCIL OF THE DISTRICT OF COLUMBIA, COMMITTEE ON THE JUDICIARY, REPORT ON BILL 6–7, "District of Columbia Guardianship, Protective Proceedings and Durable Power of Attorney Act of 1986," June 18, 1986 ("the Committee Report").

■ ■ There is additional support for our conclusion that the Guardianship Act does not require that an incapacitated individual be domiciled in the District before a guardian may be appointed by the trial court. The Committee Report reveals that the Act

> is modeled after the "Uniform Guardianship and Protective Proceedings Act" ("UGPPA") which was promulgated by the National Conference of Commissioners on Uniform State Laws in 1982 to amend Article V of the Uniform Probate Code.

Committee Report at 2. Section 106 of the Uniform Guardianship and Protective Proceedings Act specifies that:

> This [Act] applies to, and the court has jurisdiction over, guardianship and related proceedings for individuals domiciled *or present* in this State, protective proceedings for individuals domiciled in or having property located in this State, and property coming into the control of

**4.** D.C.Code § 21–2021 provides:
Except as otherwise provided in this chapter, this chapter applies to:
(1) Affairs and estates of a disappeared individual who is domiciled in the District and an individual to be protected who is domiciled in the District.
(2) Property located in the District of a non-domiciliary who is a disappeared individual or an individual to be protected;
(3) Property coming into the control of a guardian or conservator who is subject to the laws of the District; and
(4) An incapacitated individual in the District.

**5.** *Expressio unius est exclusio alterius* "asserts that the express inclusion of one (or more) thing(s) implies the exclusion of other things from similar treatment." WILLIAM D. POPKIN, MATERIALS ON LEGISLATION: POLITICAL LANGUAGE AND THE POLITICAL PROCESS 217 (3d ed.2001).

a guardian or conservator who is subject to the laws of this State.

(Emphasis added). Thus, under the UGP-PA, on which the District's Guardianship Act is modeled, the trial court has jurisdiction over an incapacitated individual who is present but not domiciled in the District, for the purpose of deciding whether to appoint a guardian. Since Ms. Uwazih arguably was an incapacitated individual present in the District for treatment at the Washington Hospital Center, she was potentially eligible for the appointment of a guardian by the trial court.[6]

■ We agree with the court, however, that Ms. Uwazih failed to sustain her burden of showing that there was property in the District belonging to her, or over which she could exercise control; thus, she was ineligible for the appointment of a conservator under the Act. See D.C.Code § 21–2021(1) and (2). The most that the record shows is that, other than a temporary offer of $20,000 made by the Washington Hospital Center, there may have been one or two modest donations, including $500 from the Nigerian embassy, that were earmarked to help defray the costs of

6. We are unpersuaded by the Washington Hospital Center's apparent argument or suggestion that in cases involving "mere capacity and presence" in the District, the Guardianship Act is "used routinely" for, or restricted to, the "appointment of medical guardians ad litems and guardians of the person in situations where conflict exists on treatment, or no adult family member, or power of attorney exists to allow treatment." In making this apparent argument or suggestion, the Washington Hospital Center points to D.C.Code § 21–2046, which pertains to the appointment of temporary emergency guardians and temporary substitute guardians, both of which fall into the category of limited guardians.

Statutory provisions must be interpreted together, not in isolation. See Gondelman v. District of Columbia Dept. of Consumer and Regulatory Affairs, 789 A.2d 1238, 1245 (D.C. 2002) (citations omitted). "[S]tatutory meaning is of course to be derived, not from the reading of a single sentence or section, but from consideration of an entire enactment against the backdrop of its policies and objectives." Id. (quoting Don't Tear It Down, Inc. v. Pennsylvania Ave. Dev. Corp., 206 U.S.App. D.C. 122, 128, 642 F.2d 527, 533 (C.A.D.C. 1980) (internal quotation marks omitted)). These statutory interpretation principles prompt us to recognize that § 21–2041 explicitly states that a guardian may be "either limited or general." Section 21–2046(a) and (b) provide for two types of limited guardians: (1) Subsection (a) indicates that a temporary emergency guardian may be appointed where an incapacitated individual has no guardian and is in a life threatening situation; (2) Subsection (b) authorizes the appointment of a temporary substitute guardian where "an ap-

pointed guardian is not effectively performing duties and ... the welfare of the incapacitated individual requires immediate action." The authorization of limited guardianships in § 21–2046 does not preclude the appointment of a general guardian under §§ 21–2041 and 2044. Indeed, § 21–2044(b) provides for the appointment of a general guardian if the trial court "is satisfied that the individual for whom a guardian is sought is incapacitated and that the appointment is necessary as a means of providing continuing care and supervision of the person of the incapacitated individual," but § 21–2044(c) permits the court initially, or later to "limit the powers of a guardian ... and create a limited guardianship."

The legislative history of the Guardianship Act supports our interpretation that the authority conferred by § 21–2021(4) is not limited to a temporary treatment situation. The section-by-section analysis of the Council bill that resulted in the Guardianship Act states, in part, that § 21–2041 "establishes the procedures for the appointment of a guardian," and that § 21–2046 "[a]llows for the temporary appointment of a guardian when a medical emergency exists[, or] [i]f an appointed guardian has failed in the performance of his studies ...." Committee Report, at 6 and 7. In addition, the UGPPA— the uniform act on which the District's Guardianship Act was modeled, was specifically designed to include limited guardianships as part of a national movement to avoid the wholesale loss of legal rights on the part of individuals who might experience only temporary incapacity. See SALLY BALCH HURME, CURRENT TRENDS IN GUARDIANSHIP REFORM, 7 Md. J. Contemp. L. Issues 143 (1995).

Ms. Uwazih's care. Those donations were not the personal property of Ms. Uwazih, but essentially belonged to her doctors or the Washington Hospital Center.

Due to its mistaken determination that no guardian could be appointed for Ms. Uwazih because she was not domiciled in the District, the trial court did not make any findings as to whether Ms. Uwazih is an incapacitated person, within the meaning of the District's Guardianship Act, and if she is, whether she required a guardian, and if so, whether a limited or general guardianship. The record before us contains an undated medical summary of events from September 13, 1999 to November 29, 1999, and a listing of "residue disabilities" as follows: "Cognitive/memory, speech/jud[g]ment, [and] Motor function [-] Left sided hemiparesis (right internal capsule injury)." In addition, the issue as to whether Ms. Uwazih is an incapacitated individual arose during the May 9, 2000, hearing, and two doctors were available to testify concerning Ms. Uwazih's cognitive capacity.[7] Ultimately, the trial court decided not to hear testimony from the doctors, saying: "If the Court should determine that it's relevant for purposes of determining the jurisdictional question to hear testimony about [Ms. Uwazih's] current condition, we'll just convene on another day." Furthermore, the trial court's written order of June 5, 2000, does not address whether Ms. Uwazih is an incapacitated individual within the meaning of the Guardianship Act.

For the foregoing reasons, we affirm the trial court's ruling denying the petition for appointment of a conservator, but reverse its ruling that it lacked jurisdiction to appoint a guardian for Ms. Uwazih, and remand this matter to the trial court for any further proceedings, consistent with this opinion, that may be required.[8]

*So ordered.*

---

7. Dr. Dennis Wang, the Director of Trauma at the Washington Hospital Center was present in the courtroom on the day of the hearing, and Dr. Lynch, the Director of the Bioethic Committee was available by telephone.

8. The record on appeal contains no information concerning Ms. Uwazih's status or condition since the hearing on May 9, 2000.

During oral argument, however, the parties represented that she was discharged from the Washington Hospital Center to a District facility, and that she is now in a facility in Southern Maryland. Counsel for Ms. Uwazih also suggested that efforts may be made to relocate her to a District facility.